DOROTHY GOTTEMOLLER, Plaintiff-Appellee, Cross-Appellant, *v.* JAMES GOTTEMOLLER, Defendant-Appellant, Cross-Appellee.

Third District   No. 74-383

Opinion filed April 14, 1976.—Rehearing denied May 25, 1976.

R. J. Lannon, Jr., of La Salle, for appellant.

Gerald M. Hunter, of Oglesby, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
Plaintiff Dorothy Gottemoller appeals from a decree of the Circuit Court of La Salle County in a divorce action with respect to a division of property owned by the parties. Defendant James Gottemoller has cross-appealed as to the custody of the three youngest children.

Plaintiff was awarded a divorce from her husband on the ground of mental cruelty. Custody of the three youngest minor children was given to the plaintiff, while custody of the three oldest minor children was vested in the father. The parties to the action were married on December 29, 1951, and lived together until approximately June 30, 1973, when plaintiff separated herself from defendant and moved to Urbana, Illinois. At the time of the divorce action the parties owned two parcels of real estate as tenants in common. This ownership consisted of the marital residence in Streator, Illinois, and a professional office building in Streator, Illinois.

The record in this case discloses that all monies invested in these parcels came from the earnings of defendant James Gottemoller, with the exception of down payments made with funds provided by plaintiff. With respect to the home-marital residence, plaintiff provided $15,000 (a gift from her father), as a down payment. Defendant testified that $4,000 of this sum was used to purchase furniture for the house. As to the professional building, plaintiff made a loan of $14,345.25 as against her interest in an insurance policy on the life of defendant. This policy had been given to her by defendant and all premiums thereon had been paid by defendant. The proceeds of the loan were used as a down payment on the professional building.

The trial court found the value of both properties to be in the total sum of $83,000 and determined that plaintiff had no special equity in either parcel over and above her one-half share in each. The parties had agreed in advance of the hearing that plaintiff would transfer her interest in both pieces of real estate to defendant, for reimbursement for the value of her share as determined by the court. Plaintiff was therefore ordered to transfer her interest in the property to the defendant in return for the payment by defendant to her of $41,500.

On appeal in this court, plaintiff contends that the court was in error in not granting her homestead rights in the marital residence and in failing to consider her special equity in the properties by reason of the monies paid as down payments.

■■ The concept of "special equities" stems from section 17 of the Divorce Act (Ill. Rev. Stat. 1973, ch. 40, §18). On the basis of such provision, the trial court is authorized to order a transfer of property, aside from alimony or property settlement, where it appears that one party holds title to property which belongs equitably in whole or in part to the other. To obtain the transfer under section 17, a party must show that he or she has furnished valuable consideration, such as money or services, over and above the usual contributions arising out of the marital relationship, which was directly or indirectly used to acquire or enhance the value of the property held in the name of the other. *Everett v. Everett* (1962), 25 Ill. 2d 342, 347, 185 N.E.2d 201.

The down payment on the marital residence could qualify as a special contribution under section 17, if the premises were solely in the name of the defendant. The down payment on the office building (which stemmed from a gift plaintiff received from her husband—the insurance policy) would not have the equitable characteristics which would justify its classification in this manner. In any event, these contributions are reflected in the ownership of the land. Plaintiff and defendant each now own an undivided one-half interest in each parcel. It appears, therefore, in addition to the down payments totalling $29,345.25, plaintiff had

received a gift in the property from her husband sufficiently to vest her with a full one-half interest in the real estate worth $83,000. In the absence of some clear indication from the record that defendant intended to convey a half interest in both parcels to his wife, *in addition to* the interest represented by her monetary contributions, we believe that the trial court was clearly correct in ordering a division of the property into two equal shares.

It is notable that plaintiff, in effect, contends that defendant gave her a one-half share of his interest in the property (the interest in the property represented by payments from his earnings), but that she, the plaintiff, did not intend the same result with her interest in the property (represented by her contributions). Nothing in the record sustains such contention which would treat the two parties' financial contributions differently. The trial court's ruling, that plaintiff had received a share of the property representing her actual monetary contribution plus a further gift on the part of defendant to create an equal ownership of the property, is supported by the record. We do not believe it is equitable, on the basis of the record, that plaintiff receive a further share under section 17 of the Divorce Act.

Plaintiff also complains that the trial court failed to award her a right of homestead in the marital residence or a monetary amount commensurate therewith. In view of the fact that the parties had agreed that defendant would continue to occupy the marital residence (since plaintiff had moved to Urbana), what plaintiff is actually seeking is an award of $10,000 against her husband, representing the full extent of the homestead exemption provided by statute. (Ill. Rev. Stat. 1973, ch. 52, §1.) It is difficult to divine upon what basis plaintiff relies for her contention that the trial court could award her $10,000, presumably representing the homestead estate. The Homestead Act provides that, in a divorce case, the court may dispose of the homestead estate according to the equities. (Ill. Rev. Stat. 1973, ch. 52, §5.) The term "homestead estate" could refer to the exemption provided in section 1 of the Act, or to the marital residence. In the event the reference is to the marital residence, the section would not be authority for the divorce court to order defendant to pay plaintiff a sum representing the homestead exemption, over and above such share in the residence as plaintiff is otherwise found to be entitled.

Plaintiff cites *Klebba v. Klebba* (5th Dist. 1969), 108 Ill. App. 2d 32, 246 N.E.2d 681, in support of her theory. In that case the court said that where an innocent wife obtains a divorce and custody of the children, and *continues to occupy the premises*, she is entitled to the homestead exemption therein even though title to the residence remains in the husband. This follows from the definition of the homestead exemption in

chapter 52, section 1 (Ill. Rev. Stat. 1973, ch. 52, §1). A householder having a family and occupying the premises as a residence is entitled to the homestead exemption. Under the rule referred to, the claim of exemption would be related to possession of the premises. The court in *Klebba*, however, went on to attempt to explain the rule and said that if the wife is "innocent" and is given custody of the children, but the trial court finds it necessary to allow the husband to remain in the marital residence, the court must balance the equities "in such a manner as to compensate the wife for her loss of homestead." 108 Ill. App. 2d 32, 38.

The *Klebba* case does not expressly authorize an award to the wife equal to the homestead exemption as a means of such compensation, and, in fact, such an award might not be sufficient in some cases. A further distinguishing factor, with which the court was apparently concerned in the instant case, was that plaintiff did not receive custody of all the children but only three of the eight. Defendant is continuing to occupy the marital residence in Streator with several of the children and would still be entitled to a homestead exemption under the Homestead Act, unlike the husband in *Klebba*. In the *Klebba* case, the court found that the wife was now the householder and the husband was not. In the case before us we could, at the most, theoretically determine that both parties are now householders, since two families have been created out of one, and each is entitled to a homestead exemption under the Act.

■■ The exemption which we have been discussing is actually created as a protection against third-party creditors, and is not an interest to be recognized as between joint tenants or tenants in common (Ill. Rev. Stat. 1973, ch. 52, §1). We, therefore, tend to question whether the homestead estate or exemption is even a cognizable interest to be bandied about between husband and wife, when they are equal owners of the property.

In the earlier case of *LaPlaca v. LaPlaca* (1955), 5 Ill. 2d 468, 126 N.E.2d 239, in which the court determined that where the separated parties occupied different portions of the residence, in which they had roughly equal investments and held in joint tenancy, neither was entitled to assert the homestead exemption as against the other. Even if the homestead exemption was considered a concrete right in the situation before us, which is to be awarded to the appropriate party, we believe that the court effectively followed the rule of balancing the equities in finding that plaintiff was entitled to compensation for a full one-half undivided interest in the marital residence.

■■ ■ Since the defendant remained entitled to a full homestead exemption himself, it is difficult to see how he would be obligated to reimburse plaintiff for more than one-half of the original exemption applying before the divorce of the parties. There even has been some intimation that the husband and wife joint tenants have a joint interest in

694

the exemption rather than having it vested solely in the husband as the presumed householder. (See, e.g., *Wiegand v. Wiegand,* 410 Ill. 533; *LaPlaca v. LaPlaca,* 5 Ill. 2d 468, 472-73.) On consideration of the issue as a whole, we conclude that the equal division of the marital residence was sufficient to compensate plaintiff for her loss of homestead, and, also, for her financial contributions as to the real estate. The finding of the trial court on the issues relating to the real estate should be affirmed.

Some confusion has been manifested as to the role of the courts in determining the equities in real estate of the parties in a divorce action. The courts are operating within an area which is purely in the field of equity and the objective is to do equity as between the parties. For example, section 17 of the Divorce Act states that whenever a divorce is granted "if it shall appear to the court that either party holds the title to property equitably belonging to the other, the court *may* compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable." (Emphasis added.) It is notable that this provision simply makes it possible for the court to compel a conveyance in an appropriate case. The action of the court in such case, as is true in all other similar matters, vests a large measure of discretion in the trial court to be applied on an equitable basis. This discretion has been properly applied in the cause before us as to the interests of the parties in the real estate.

■■ Plaintiff also argues on appeal, as to personal property, that the trial court erred in distributing certain items of such property to defendant. She claims that the piano awarded to the defendant was hers, and that a pair of candleholders and a door chime also given to defendant were originally gifts to her from her family. Plaintiff had drawn up what she thought would be an equitable distribution of the jointly owned property, which included those items and also a freezer. There was no contradiction in the record of plaintiff's testimony that the piano was purchased from her private funds. The court should have awarded the piano to the plaintiff. While it may also be inequitable for defendant to receive the chimes, candleholders and freezer, we find nothing in the record which establishes a sufficient basis for us to reverse the trial court as to these matters. The order pertaining to the division of personal property should be modified to provide that the piano should be awarded to plaintiff.

We now give consideration to the cross-appeal of defendant concerning the custody of the three youngest children. Defendant argues that the trial court misapplied the privilege pertaining to the psychiatrist-patient relationship (Ill. Rev. Stat. 1973, ch. 51, §5.2). In her complaint for divorce, plaintiff asks only for the custody of the three youngest children: James, 11; Jeanne, 8; and Michael, 4. Defendant sought custody

of all six of the minors. The two oldest children of the eight were in college and at or near 21 years of age. The five oldest children testified that they wanted to remain together and that they preferred to stay with their father, since they thought him to be the better and more stable parent.

Defendant called as a witness Dr. Manfredi, the family psychiatrist for the last 5 years. The doctor testified as to the traumatic effect of a divorce on the children and the need to keep them together rather than splitting them up. Dr. Manfredi also gave his diagnosis of defendant's condition, but when the doctor was asked about plaintiff's condition, plaintiff objected on the ground that such information was privileged under the psychiatrist-patient rule. Defendant was refused the chance to make an offer of proof by the trial court. The psychiatrist was also prevented from answering the question as to which party he thought most capable of raising the minor children.

Defendant contends that the psychiatrist-patient privilege should give way to the overriding need to fully examine all relevant information in order to determine the children's best interests. Defendant also contends that the privilege is not applicable in this case for three reasons: (1) plaintiff brought her mental condition into issue by alleging herself to be a fit and proper person to have custody of the children (Ill. Rev. Stat. 1973, ch. 51, §5.2(c)); (2) the privilege extends only to *communications* made by the patient to the psychiatrist and not to the psychiatrist's diagnosis; and (3) plaintiff waived the privilege by voluntarily signing a release (introduced into evidence by the defendant) which directed Dr. Manfredi to release plaintiff's records to defendant's counsel. We believe that defendant's third contention, that plaintiff waived the psychiatrist-patient privilege is sustained by the record.

The psychiatrist-patient privilege, like the privileges attaching to other relationships such as husband-wife, attorney-client, and physician-patient, is based on the premise that communications made within the ambit of the relationship are intended to be, and should remain, confidential. (McCormick, Handbook of the Law of Evidence §72 (2d Ed. 1972).) It has been held that, where the particular communication was made with other persons present, no confidentiality was intended or could be expected, and no privilege thus attached. (*People v. Palumbo* (1955), 5 Ill. 2d 409, 414-15, 125 N.E.2d 518; *People v. Torres* (1st Dist. 1974), 18 Ill. App. 3d 921, 927-28, 310 N.E.2d 780; *People v. McNanna* (3rd Dist. 1968), 94 Ill. App. 2d 314, 318, 236 N.E.2d 767—all of the cases cited dealt with husband-wife privilege.) Also, where the communication was made confidentially, if the party entitled to assert the privilege consents to revelation of the material to a third party, the privilege is deemed waived. *Scott v. Harris* (1885), 113 Ill. 447, 455.

■■■ In the instant case, sometime after the divorce complaint was filed, plaintiff signed the following document:

"Dorothy Gottemoller, the undersigned, authorizes you to release your medical records pertaining to treatment of herself and her husband, Dr. James Gottemoller, to attorney R. J. Lannon, Jr."

This authorization was directed to Dr. Manfredi. The "Lannon" referred to was the attorney for defendant. It is thus apparent that plaintiff directed her psychiatrist to make available her records to counsel for the opposing party. Such voluntary disclosure to a third party removed the shield of confidentiality from the otherwise privileged relationship between Dr. Manfredi and the plaintiff. It could not be contended that plaintiff was compelled to authorize the release of the records under discovery procedures, as Supreme Court Rule 201(b)(2) clearly allows a party to assert any applicable privilege at the discovery stage of the proceedings. Plaintiff clearly waived the privilege by voluntarily authorizing the release of the records. Nor could there be a claim of privilege based on the husband-wife relationship of the parties at the time of the waiver. The statute regarding that privilege expressly excludes situations where the custody of the spouses' children is directly in issue. Ill. Rev. Stat. 1973, ch. 51, §5.

■■ We conclude, therefore, that the trial court was in error in allowing the plaintiff to claim the privilege as to the testimony of Dr. Manfredi which defendant sought to elicit. Since the trial court refused to hear an offer of proof for the record, we are not able to determine the nature and effect of such error and believe that the cause should be remanded with directions to the court below to consider Dr. Manfredi's testimony concerning plaintiff's mental condition, unless some other valid objection is raised by plaintiff. The court should then again determine the issue of custody of their three youngest children and determine what is in the best interests of those children and the parties to this cause.

The judgment of the Circuit Court of La Salle County is therefore affirmed as to the division of real property, modified only as to the division of personal property to provide that the piano should become the property of plaintiff, and the decree is vacated in part as to the question of custody of the three minor children. This cause is remanded for consideration of such issue of custody to be determined in accordance with the views expressed in this opinion.

Affirmed in part and reversed and remanded in part.

STOUDER and STENGEL, JJ., concur.