THE PEOPLE *ex rel.* TINA JONES *et al.*, Minors, Plaintiffs-Appellees, *v.* ELGIN CHARLES JONES *et al.*, Defendants-Appellants.

Fifth District  No. 75-272

Opinion filed June 23, 1976.

Roscoe D. Cunningham, of Lawrenceville, for appellants.

William J. Scott, Attorney General, of Chicago (John D. Whitenack, Assistant Attorney General, of counsel), for appellees.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Lawrence County terminating the parental rights of defendants-appellants, Elgin and Nancy Jones, and ordering the appointment of the Department of Children and Family Services, an agency of the State of Illinois, as guardian of four minor children with power to consent to their adoption. On appeal defendants allege that the petition for adjudication of wardship failed to state a cause of action under the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 701—1 *et seq*.); that defendants were prejudiced by the denial of counsel at the detention hearing at which the children were initially removed from defendants' home; and that the court erred in admitting certain evidence at the adjudicatory hearing.

Defendants have not directly challenged the sufficiency of the evidence upon which the court made its ruling nor have they suggested that the ruling of the court is against the manifest weight of the evidence. Therefore, the facts can be summarized briefly here. Mrs. Louise Mellet, defendant Nancy Jones' mother, called the Department of Children and Family Services (hereinafter Department) concerning the possibility of child abuse after defendants' two oldest children had been left with her for the weekend. The same day Mrs. Mellet took one child, Teresa, to the Lawrenceville, Illinois, Police Department where pictures were taken depicting bruises on both arms and legs. The Department of Children and Family Services attempted to convince defendants to secure professional counseling and discovered that Teresa had been hospitalized two weeks prior to this incident bleeding from both ears after supposedly falling from a crib. In addition a younger girl, Jennifer, had suffered a broken arm after supposedly falling from a rocking chair. The Department again requested defendants to seek help after Elgin Jones had been charged with disorderly conduct, apparently in the beating of his wife. Donna Mellet, Nancy Jones' sister, filed criminal child abuse charges against Elgin Jones after a family fight. The same date the Department filed a petition for adjudication of wardship alleging that two of the children had been "severely beaten" by defendant Elgin Jones. At a detention hearing held the same day, a child welfare worker from the Department testified that a criminal complaint had been filed against Elgin Jones for child

abuse. The court also took notice of a battery complaint against Nancy Jones for beating her sister, Donna Mellet. Elgin Jones asked if an attorney were supposed to be present. The court stated "not at this time" but advised defendants that an attorney would be provided before any "final disposition" and offered to appoint attorneys for the criminal charges as well.

The court determined that the welfare of the children required that they be placed in the temporary custody of the Department pending the outcome of the adjudicatory hearing and a guardian ad litem was appointed to represent the children.

The adjudicatory hearing commenced on January 22, 1975. In the interim, an attorney was appointed to represent the children and the parents, both parents pleaded guilty to battery, and Elgin Jones served a three months sentence.

At the beginning of the adjudicatory hearing the State's Attorney asked to be allowed to amend the petition to seek the power to consent to adoption of the children. Defendants entered a general objection and argued that the petition did not contain "necessary allegations" under the Juvenile Court Act to support the claim for power to consent to adoption. The State then asked to amend the petition to allege that the home environment was injurious to the health and welfare of the children. This amendment was granted without further objection.

Although both defendants denied abuse of their children, the evidence clearly established that some abuse had taken place. In addition, a woman with whom one child had been placed after the detention hearing testified in detail about the child's lack of normal intellectual and emotional development and her great fear of men.

Defendants first contend that the petition for adjudication of wardship fails to conform to the requirements of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 701—1 *et seq.*) and the Adoption Act (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1 *et seq.*). Section 4—1(5) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 704—1(5)) requires that the petition for adjudication of wardship must state that the petitioner is seeking appointment of a guardian with power to consent to adoption if such disposition is contemplated. Section 5—9(2) (Ill. Rev. Stat. 1975, ch. 37, par. 705—9(2)) requires that the parents be found unfit as defined in the Adoption Act. Section 1 of that Act (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1) defines "unfit person" and includes the following as grounds: "Failure to protect the child from conditions within his environment injurious to the child's welfare." Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1(D)(f).

■■ Defendants rely on *Zook v. Spannaus*, 34 Ill. 2d 612, 217 N.E.2d 789 (1966), wherein the court held, in a proceeding on a petition for a writ of habeas corpus, that the failure of the petition for adjudication of

dependency to pray for appointment of a guardian with power to consent to adoption and the failure of the trial court to make findings of the necessity of such an appointment deprived the court of jurisdiction to render such a disposition. *Zook* is clearly distinguishable from the case at bar. Here petitioner sought leave to amend the petition orally to include a prayer for appointment of a guardian with power to consent to adoption. Following objection by defendants to the lack of clarity of the amendment, petitioner added that the "environment of the children [was] injurious to their health and their welfare." No objection was interposed and the court granted the amendment. We believe that the amendment adequately notified defendants of the nature of the proceedings and allegations against them, adequately described the grounds for the filing of the petition, and was sufficient to allow the court's specific finding that defendants were unfit and that appointment of a guardian with power to consent to adoption was necessary to protect the best interests of the children.

Defendants next contend that the court erred in denying them certain rights at the detention hearing. During that hearing, defendant Elgin Jones interrupted the testimony of a witness and asked the court, "Judge, are we supposed to have an attorney present?" The court responded, "Not at this time. You will be given an attorney before any final disposition is made. * * *" The court went on to explain the purpose of the hearing. Defendants rely on the broad language of section 1—20 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 701—20), which provides that the minor and his parents are entitled to "the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and * * * to be represented by counsel" during the proceedings. "Proceedings" under the statute are not further defined. Subparagraph (3) of the same paragraph provides that the court shall advise the parties of the nature of the proceedings and of the aforementioned rights "at [their] first appearance before the court." Defendants contend that the court failed in each of these respects.

■■ We believe, however, that section 1—20 (par. 701—20) must be read in the context of the entire Juvenile Court Act. Section 3—6 (par. 703—6) provides that if the court at the detention hearing finds "probable cause" to believe that the minor is delinquent, dependent, neglected or otherwise in need of supervision and further finds that detention or placement of the minor in a shelter care facility is "a matter of immediate and urgent necessity for the protection of the minor" or others, the court may order immediate placement. Subparagraph (3) of section 3—6 (par. 703—6) provides that if neither the parent nor *counsel* is present or had actual notice of the proceedings, he may file affidavits supporting this fact

and have a rehearing within 24 hours. We believe that this provision underscores the legislative intent that the first consideration of the process be the immediate protection of the minor with opportunity for prompt re-examination of the proceedings. In that regard we believe defendants' reliance upon *People v. Giminez*, 23 Ill. App. 3d 583, 319 N.E.2d 570 (3d Dist. 1974), to be misplaced. In *Giminez*, the court held that the court's failure to appoint counsel at a detention hearing for a child sought to be declared delinquent was reversible error. The court relied upon an analogy between the detention hearing and a preliminary hearing in adult criminal cases and the importance of counsel in those proceedings. (See *Coleman v. Alabama*, 399 U.S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999 (1970); *People v. Adams*, 46 Ill. 2d 200, 263 N.E.2d 490 (1970).) The court noted, however, that the prejudice to the juveniles involved arose from testimony that the minors gave confessions to the police and that the circumstances surrounding the confessions could not be explored adequately without effective cross-examination of witnesses by counsel. We find no such obvious prejudice to defendants in the instant case. Defendants were represented competently at the adjudicatory hearings and the facts supporting the allegations were proved by sufficient competent proof to support the court's finding. Although we would prefer that the court would advise the parties of their rights and the nature of the proceedings in greater detail upon their first appearance, we find no prejudice to defendants because of the nature and quantity of the evidence and defendants' failure to avail themselves of the procedure for rehearing outlined in section 3—6 (par. 703—6).

Defendants contend finally that the court erred in admitting certain documents and testimony into evidence. At the adjudicatory hearing, Linda Stoll, Administrative Secretary of the Southeastern Mental Health Center in Olney, Illinois, produced documents under her control which were admitted over objection by defendants. Defendants were encouraged by the Department of Children and Family Services to seek counseling at the Center and defendants had kept some infrequent appointments with personnel there. The documents admitted into evidence constituted the complete files of the Center concerning Mr. and Mrs. Jones, including correspondence with the Department of Children and Family Services, summaries of interviews conducted by social workers at the Center and one psychiatric evaluation of each defendant by a psychiatrist. In addition the files contain forms signed by each defendant consenting to release of the information to the Department of Children and Family Services.

■■ The State has responded that no privilege existed as to any of the material contained in the exhibits. We need not reach this question since we believe that whatever privilege may have existed was waived by

defendants. Both defendants signed consent forms to allow the information compiled by the Mental Health Center to be released to the Department of Children and Family Services. By voluntarily consenting to surrender of the documents to a third person or agency, particularly a present or potential adversary, defendants waived any privilege which might have been asserted. In *People v. Ryan*, 30 Ill. 2d 456, 197 N.E.2d 15 (1964), the court recognized that the attorney-client privilege could be waived by voluntary disclosure to a third person but found no waiver under the facts there present. We believe, however, under the facts in the instant case, that defendants waived whatever privilege might have existed in the documents admitted into evidence.

■■ Defendants also contend that the trial court improperly admitted hearsay evidence. We agree. The court misapprehended the nature of the proceedings and the rule set forth in section 4—6 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 704—6), when it ruled that hearsay evidence was admissible in the adjudicatory hearing. Although hearsay evidence is admissible in the dispositional phase (Ill. Rev. Stat. 1975, ch. 37, par. 705—1), it is not proper in the adjudicatory phase of the proceedings even where, as here, the adjudicatory and dispositional hearings were held simultaneously. (*People v. Brady*, 7 Ill. App. 3d 404, 287 N.E.2d 537 (4th Dist. 1972).) We do not believe, however, that the court's error requires reversal.

The first instance complained of is the testimony of the police officer to whom the initial complaint was made by Mrs. Louise Mellet, defendant Nancy Jones' mother. A general objection was entered by defendants to the officer's statement that Mrs. Mellet "implied to me that it was the father that had beat [*sic*] the child." Mrs. Maxine Sutherland, a social worker with the Department of Children and Family Services later testified that Mrs. Mellet had told her substantially the same thing, drawing another general objection. Both objections were overruled. Mrs. Sutherland was also allowed, over general objection, to testify that she had read articles in the newspaper about a disorderly conduct charge filed against defendant Elgin Jones. The fourth instance complained of was the testimony of Father Anthony Viton, a mental health counselor with the Southeastern Illinois Mental Health Center in Olney, Illinois. Father Viton testified that the psychiatrist who had examined the defendants told him that the Jones' had not made "sufficient progress" to warrant return of the children to them. Defendants objected specifically on hearsay grounds, which objection was overruled. William C. Noel, a child welfare worker, was allowed to testify over specific objection that Donna Mellet, defendant Nancy Jones' sister, told him of assaults by defendants against the children and against her. Defendants also assign as error the admission of the exhibits previously discussed.

The testimony concerning matters that Donna and Louise Mellet had stated to various witnesses about the beatings of the children should not have been allowed. The facts that complaints were made were admissible as evidence why investigations were made but not as to the truth of the allegations. But both women were available to testify and did testify in rebuttal. Both were cross-examined and defendants were therefore able to explain and attack the hearsay allegations. Louise Mellet's testimony indicated that, although she had made the complaint, she had never witnessed any acts of abuse. Donna Mellet's testimony was that she had witnessed the abuse and had been abused herself.

■■ We believe that the essence of the rule prohibiting the admission of out-of-court statements is the inability of the parties to confront the witnesses in open court while under oath and to cross-examine them about their knowledge of the matters asserted. (See 3A Wigmore, Evidence §1018 (Chadbourn rev. 1970); 5 Wigmore, Evidence §1365 (Chadbourn rev. 1974); McCormick, Evidence §245 (2d ed. 1972); *Novicki v. Department of Finance*, 373 Ill. 342, 26 N.E.2d 130 (1940).) Where, as in the instant case, this was achieved, we believe that no prejudice to defendant resulted.

■■ Similarly we believe that Mrs. Sutherland's statement that she had read an article about Elgin Jones' arrest in the newspaper was rendered harmless by Jones' admission that he had been arrested and prosecuted.

■■ Father Viton's statement about what the psychiatrist had said to him does not fall into either of the above categories but we believe it to be harmless because of the admissions into evidence of the files from the Southeastern Illinois Mental Health Center which contained the psychiatrist's report and evaluation.

For the foregoing reasons, the judgment of the Circuit Court of Lawrence County is affirmed.

Affirmed.

EBERSPACHER and G. J. MORAN, JJ., concur.