RICHARD GOLDBERG, Petitioner-Appellee, v. JUDITH DAVIS, Respondent-Appellant.

First District (6th Division)   No. 1—90—0392

Opinion filed June 14, 1991.—Rehearing denied July 12, 1991.

Coffield, Ungaretti, Harris & Slavin, of Chicago (Daniel J. Pope, J. Timothy Eaton, and William D. Shaver, of counsel), for appellant.

Sandra G. Nye & Associates, of Chicago (Sandra G. Nye and Randy Wayne Franklin, of counsel), for appellee.

JUSTICE LaPORTA delivered the opinion of the court:

This is an interlocutory appeal pursuant to Supreme Court Rule 307 (134 Ill. 2d R. 307) brought by respondent, Judith Davis, M.D., from a circuit court order directing Davis to produce the past psychiatric records of C.B., her patient, in response to the *subpoena duces tecum* issued by the Illinois Department of Professional Regulation. Both petitioner Goldberg and respondent Davis are physicians licensed to practice psychiatry in this State and are currently practicing in the Chicago area.

The Illinois Department of Professional Regulation filed a complaint pursuant to the provisions of the Illinois Medical Practice Act of 1987 (Ill. Rev. Stat. 1987, ch. 111, par. 4400—22) on July 25, 1988, in a disciplinary proceeding seeking to revoke or suspend the license of petitioner, Richard Goldberg, as a physician, alleging improper treatment of his former patient, and that he engaged in unethical and improper physical acts with her in October 1987 while treating her as a patient for depression and an eating disorder known as bulimia.

Specifically, the statutory grounds on which the complaint is based are alleged violations of section 22 of the Illinois Medical Practice Act, which provides:

"A. The Department may revoke, suspend, place on probationary status, or take any other disciplinary action as the Department may deem proper with regard to the license *** of any person issued under this Act to practice medicine, or to treat human ailments without the use of drugs and without operative surgery upon any of the following grounds:
* * *
4. Gross negligence in practice under this Act;

5. Engaging in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public; [and]
* * *
20. Immoral conduct in the commission of any act related to the licensee's practice." Ill. Rev. Stat. 1987, ch. 111, pars. 4400—22(A)(4), (A)(5), (A)(20).

The patient testified at the December 7, 1988, hearing before the administrative hearing officer. At the request of the Department, the respondent, Davis, testified as C.B.'s present psychiatrist.

Thereafter, on March 27, 1989, petitioner Goldberg filed in the circuit court of Cook County "an action to compel production of relevant papers in an administrative proceeding" seeking records in

Davis' possession concerning treatment of the patient by other therapists which occurred from 4 to 10 years prior to her treatment by Goldberg. The petition alleged that the patient had waived the privilege to refuse disclosure by her testimony and by allowing Davis to testify concerning the records.

At the same time, Goldberg sought to compel the Department to issue a subpoena to Davis for the records, and on June 29, 1989, the hearing officer issued a subpoena for the records in Davis' possession of the patient's treatment prior to her treatment by Goldberg. Davis' motion to quash the subpoena based on privilege was heard and denied by a new hearing officer on October 13, 1989. The hearing officer found that Davis' testimony and the patient's testimony constituted a waiver of the patient's privilege of nondisclosure but held that there was a question of the relevancy of the records which should be addressed by the circuit court.

On November 17, 1989, Goldberg amended the petition pending in the circuit court to "an application for order compelling production of records in an administrative proceeding" seeking to compel Davis to comply with the outstanding subpoena. Davis made the same response as she had argued before the hearing officer.

On January 9, 1990, the trial judge granted Goldberg's application for an order compelling production of records in an administrative proceeding and ordered Davis to produce the records on February 7 for an *in camera* inspection as to relevancy only. On February 6, Davis filed a notice of interlocutory appeal of the January 5 order of the trial judge seeking its reversal and an order of this court denying Goldberg's petition and quashing the subpoena or, in the alternative, for a reversal with remand for further proceedings consistent with its opinion.

Respondent Davis raises three issues on appeal: (1) whether the psychiatric records ordered to be produced are privileged under the Illinois Mental Health and Developmental Disabilities Confidentiality Act (Act) (Ill. Rev. Stat. 1987, ch. 91½, pars. 801 through 817); (2) whether there is an exception in the Act which can be invoked to force respondent to disclose prior psychiatric records of other treatment providers; and (3) whether respondent has waived the privilege to refuse disclosure by her testimony at the administrative hearing. Goldberg adds a fourth issue: whether the patient has waived her privilege to refuse disclosure of her psychiatric records by bringing an administrative complaint and by her testimony at the administrative hearing.

Petitioner Goldberg contends on appeal that the records sought are no longer privileged and must be disclosed since Davis has no statutory privilege to refuse disclosure and the Illinois Administrative Code, as well as the Mental Health and Developmental Disabilities Confidentiality Act, requires their disclosure and production where the propriety of his treatment of the patient is at issue. Petitioner also argues on appeal that the patient waived any privilege she may have had by bringing her complaint against Goldberg and by testifying, that Davis could and did waive any privilege she may have had, and that Davis relied on the past records as a basis for her testimony and opinion.

C.B. is currently and, since approximately December 1987, has been under psychiatric treatment as a patient of respondent Davis. From approximately June to October of 1987, C.B. was a psychiatric patient of petitioner Goldberg for treatment of depression and eating disorder problems.

On June 25, 1988, the Department filed a complaint against Goldberg seeking to revoke or suspend his license as a physician based on allegations of improper treatment to his patient C.B. and on the specific allegation that petitioner engaged in a sexual relationship with her while she was his patient.

On December 5, 1988, the administrative hearing on the complaint commenced before the hearing officer for the Medical Disciplinary Board and at the time of this appeal was ongoing. The patient testified about her treatment while Goldberg's patient and about sexual incidents which occurred during her treatment as his patient.

The Department called respondent Davis as a witness at the hearing. Davis stated that she did not agree to testify as an expert in eating disorders but that she did agree to testify for the purpose of supporting her patient. She stated she was not compensated for her testimony nor was she there in response to subpoena. Davis testified in general terms about her diagnosis of the patient, her opinion concerning the propriety of Goldberg's treatment and standards of conduct of a physician to his patient. During her cross-examination Davis referred to records in her possession of the patient's psychiatric treatment prior to her treatment by petitioner Goldberg. The record discloses no reference on direct examination as to the specifics of patient's treatment prior to Dr. Goldberg's services.

Following this hearing petitioner sought to obtain copies of the records of patient's prior treatment by filing in the circuit court its petition for production of the records, later amended, and subsequently ordered produced by the circuit judge on January 9, 1990,

while simultaneously petitioning for and obtaining the issuance of a *subpoena duces tecum* by the administrative hearing officer on June 29, 1989. Davis refused to comply with the subpoena and appealed the interlocutory order of the trial judge ordering her to comply.

Before ordering Davis to produce the prior records for an *in camera* inspection, the trial judge stated that he had reviewed Goldberg's application to compel production, Davis' response, Goldberg's reply, Davis' motion to quash subpoena, Goldberg's answer thereto and Davis' reply, and copies of various transcripts. He heard arguments of the respective parties. The court then stated:

> "The patient testified and Dr. Davis testified, and I believe Dr. Davis alluded to the fact that [she] had referred to her past records. *** Now in all fairness and to see that we have due process, if Dr. Davis relied on this in formulating her opinion *** [i]f Dr. Davis relied on those records in all fairness to Dr. Goldberg, he should have those documents to review. The privileged [*sic*] was waived by that testimony. The motion to quash will be, the subpoena duces tecum will be denied. I believe the second hearing officer said that you should produce them *** I will affirm him. In all fairness Dr. Goldberg is entitled to that. There is a waiver of the privilege."

The trial judge then found there was still a question on the issue of relevance. He again reiterated:

> "Davis used them to formulate an opinion and Goldberg has a right to see the basis of that opinion."

He then ordered the records produced for the court's *in camera* inspection.

We first consider the relevant statutory provisions of the Illinois Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1987, ch. 91½, pars. 801 through 817) as they address the issues of confidentiality, privilege and disclosure. Respondent refers us to sections 10(a), 10(a)(1), 3, and 9 as controlling, while petitioner additionally cites sections 4 and 5. The Act provides in pertinent part:

> "10. (a) Except as provided herein, in any civil, criminal, administrative, or legislative proceeding, or in any proceeding preliminary thereto, a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications.
>
> (1) Records and communications may be disclosed in a civil, criminal or administrative proceeding in which the recipient introduces his mental condition or any aspect of his services re-

ceived for such condition as an element of his claim or defense, if and only to the extent the court in which the proceedings have been brought, or, in the case of an administrative proceeding, the court to which an appeal or other action for review of an administrative determination may be taken, finds, after in camera examination of testimony or other evidence, that it is relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible; that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established by such evidence; and that disclosure is more important to the interests of substantial justice than protection from injury to the therapist-recipient relationship or to the recipient or other whom disclosure is likely to harm. Except in a criminal proceeding in which the recipient, who is accused in that proceeding, raises the defense of insanity, no record or communication between a therapist and a recipient shall be deemed relevant for purposes of this subsection, except the fact of treatment, the cost of services and the ultimate diagnosis unless the party seeking disclosure of the communication clearly establishes in the trial court a compelling need for its production." Ill. Rev. Stat. 1987, ch. 91½, par. 810(a)(1).

"3. (a) All records and communications shall be confidential and shall not be disclosed except as provided by this Act.

(b) A therapist is not required to but may, to the extent he determines it necessary and appropriate, keep personal notes regarding a recipient. Such personal notes are the work product and personal property of the therapist and shall not be subject to discovery in any judicial, administrative or legislative proceeding or any proceeding preliminary thereto." Ill. Rev. Stat. 1987, ch. 91½, par. 803.

"9. In the course of providing services and after the conclusion of the provision of services, a therapist may disclose a record or communication without consent to:
***
(2) persons conducting a peer review of the services being provided[.]
* * *
Information may be disclosed under this Section only to the extent that knowledge of the record or communication is essential to the purpose for which disclosure is made and only after the recipient is informed that such disclosure may be made. A person to whom disclosure is made under this Section shall not

redisclose any information except as provided in this Act." Ill. Rev. Stat. 1987, ch. 91½, par. 809.

"4. (a) The following persons or entities shall be entitled, upon request, to inspect and copy a recipient's record or any part thereof:

\* \* \*

(2) the recipient if he is 12 years of age or older." Ill. Rev. Stat. 1987, ch. 91½, par. 804.

"5. (a) Except as provided in Sections 6 through 12.2 of this Act, records and communications may be disclosed only with the written consent of:

\* \* \*

(3) the recipient if he is 18 years or older or his guardian if he has been adjudicated to be under legal disability.

(b) Every consent form shall be in writing and shall specify the following:

(1) the person or agency to whom disclosure is to be made;

(2) the purpose for which disclosure is to be made;

(3) the nature of the information to be disclosed;

(4) the right to inspect and copy the information to be disclosed;

(5) the consequences of a refusal to consent, if any; and

(6) the calendar date on which the consent expires, provided that if no calendar date is stated, information may be released only on the day the consent form is received by the therapist; and

(7) the right to revoke the consent at any time.

The consent form shall be signed by the person entitled to give consent and the signature shall be witnessed by a person who can attest to the identity of the person so entitled. A copy of the consent and a notation as to any action taken thereon shall be entered in the recipient's record. Any revocation of consent shall be in writing, signed by the person who gave the consent and the signature shall be witnessed by a person who can attest to the identity of the person so entitled. No written revocation of consent shall be effective to prevent disclosure of records and communications until it is received by the person otherwise authorized to disclose records and communications.

(c) Only information relevant to the purpose for which disclosure is sought may be disclosed. Blanket consent to the disclosure of unspecified information shall not be valid. Advance consent may be valid only if the nature of the information to be

disclosed is specified in detail and the duration of the consent is indicated. Consent may be revoked in writing at any time; any such revocation shall have no effect on disclosures made prior thereto;

(d) No person or agency to whom any information is disclosed under this Section may redisclose such information unless the person who consented to the disclosure specifically consents to such redisclosure." Ill. Rev. Stat. 1987, ch. 91½, par. 805.

The patient C.B. specifically has not consented to the disclosure of her prior records in the pending disciplinary proceeding and Davis, on the patient's behalf, has refused to produce them in response to the subpoena issued by the hearing officer and now appeals the order of the circuit court ordering her to produce the prior records for an *in camera* inspection to determine their relevancy to the disciplinary proceeding.

Goldberg argued before the trial judge, and now on appeal, that both the patient and Davis have waived the privilege of confidentiality in their testimony before the administrative hearing officer. Goldberg contends that in challenging the propriety of his conduct and the treatment rendered to C.B., the patient and Davis have placed the prior treatment by therapists earlier in time to Goldberg before the Board. Goldberg further contends that since the patient has accused him of improper conduct, her credibility is at issue and the prior records "could be" relevant to that determination. Goldberg further contends that since Davis testified to the patient's mental condition and since her conclusions may have been based in part on the prior records, they are germane to a determination of the validity of her conclusions and testimony.

Initially we consider whether the psychiatric records ordered to be produced are privileged under the Act. On cross-examination Davis testified she had requested and obtained the patient's records from the Menninger Foundation in Topeka, Kansas, for 1979-81, from Dr. Derrick Miller for 1977-79, and from the Inpatient Eating Disorders Program at the University of Wisconsin for 1983.

The covering letter transmitting the records from Menninger to Davis was stamped with the following language: "This information has been disclosed to you and you alone from medical records whose confidentiality is protected by Federal law and is being released on the basis that it not be redisclosed to anyone, including the patient. The Menninger Foundation can take no responsibility for any legal liability resulting from such disclosure."

Goldberg attacks as nonsense and as a misstatement of the law Menninger's condition that its records not be redisclosed because redisclosure is a violation of Federal law; he contends there is no Federal mental health confidentiality law which applies here. He argues that if in fact the patient herself wishes to see the records, disclosure to her is required. Ill. Rev. Stat. 1987, ch. 91½, par. 804.

■■ Here the patient consented to Menninger's disclosure of her records to Davis. The records were forwarded conditioned on the prohibition against redisclosure. Section 5(d) of the Act provides that where records are disclosed to a therapist with the patient's consent, "[n]o person *** to whom any information is disclosed *** may redisclose such information unless the person who consented to the disclosure specifically consents to such redisclosure." (Ill. Rev. Stat. 1987, ch. 91½, par. 805(d).) The record clearly shows that C.B. has not consented to any redisclosure by Davis.

■ Section 5 of the Act also provides that patient records of and communications with a therapist may be disclosed only with the consent of the patient. (Ill. Rev. Stat. 1987, ch. 91½, par. 805(a)(3).) A patient, and a therapist acting on behalf of and in the interest of the patient, has the privilege to refuse to disclose and to prevent disclosure of the patient's record or communications (Ill. Rev. Stat. 1987, ch. 91½, par. 810(a)), and all records and communications shall be confidential and shall not be disclosed unless they come within one of the exceptions of the Act (Ill. Rev. Stat. 1987, ch. 91½, par. 803).

The parties agree that a patient's psychiatric records and communications to a therapist ordinarily are privileged communications unless or until the patient expressly or impliedly has waived the privilege of nondisclosure. Goldberg contends that patient consent is irrelevant to disclosure under section 10 in a judicial, administrative or legislative proceeding and that here the privilege has been waived by the patient's bringing the administrative complaint and by testifying at the administrative hearing. We must consider, therefore, whether C.B.'s consent is irrelevant here or whether it is waived. In response to the hearing officer's request and Goldberg's demand, C.B. has specifically refused to consent to disclosure of her past psychiatric records and communications in the administrative hearing, and therefore, the privilege is not expressly waived.

Goldberg argues that C.B. has impliedly waived the privilege by publicizing her condition, history and treatment in the administrative proceeding by bringing a complaint, by her disclosures to Department personnel in bringing the complaint, and by her testimony at the administrative hearing. Goldberg cites four cases in support of his con-

tention: *Novak v. Rathnam* (1985), 106 Ill. 2d 478, 478 N.E.2d 1334; *In re Pebsworth* (7th Cir. 1983), 705 F.2d 261; *People v. Newbury* (1972), 53 Ill. 2d 228, 290 N.E.2d 592; and *Gottemoller v. Gottemoller* (1976), 37 Ill. App. 3d 689, 346 N.E.2d 393. We find all four cases are factually distinguishable from the question before us.

In *Novak v. Rathnam,* 14 months after patient Endicott's discharge from a mental health center upon the approval of a psychiatrist and a psychologist, the patient killed plaintiff's daughter in Florida. The patient raised an insanity defense and called three therapists and others to testify in support of his defense. The patient was found not guilty by reason of insanity and confined to a State hospital. The victim's family filed a wrongful death action in Illinois against the two therapists who, when called to testify, claimed the therapist/patient privilege. The supreme court held that the waiver as to medical information in the same records as in the prior proceeding will be regarded as a waiver of the privilege in a subsequent proceeding.

In *Gottemoller*, a divorce action, the wife's voluntary written direction to her psychiatrist to make her psychiatric records available to husband's counsel removed the shield of confidentiality and rendered those records admissible on the issue of child custody.

In *Newbury*, statements made by a defendant to a psychiatrist in a court-ordered examination will be protected from disclosure under the psychiatrist-patient privilege on the issue of his guilt. But where defendant called his privately retained psychiatrist as a witness and elicited inculpatory statements made by defendant to him, the defendant waived the privilege. The court found the statements were related to the matter being tried.

In *Pebsworth*, where the patient assented to insurance reimbursement claims procedures, he waived any privilege as to specific kinds of billing and administrative records; such records were admissible in an investigation of possible criminal misconduct by a psychotherapist for fraudulent claims for reimbursement from medical insurance companies.

In each case the treatment records were of current treatments and communications and had a direct bearing on the matter being tried. Unlike our pending appeal, the records did not relate to communications made to other therapists remote in time from the events complained of.

Davis responds that the patient has not introduced her mental condition as an element of her claim against Goldberg nor did she testify "at length concerning her psychiatric history and years of treatment" as Goldberg has argued here. (*Bland v. Department of Chil-*

*dren & Family Services* (1986), 141 Ill. App. 3d 818, 826-27, 490 N.E.2d 1327.) Davis points out that C.B.'s testimony was only a brief, generalized recital of the fact of her past contacts with psychiatric therapists without a recital of the substantive nature of these treatments. Her specific testimony concerned her treatment by Goldberg and the sexual incidents which are alleged to have occurred during that treatment. Davis argues that C.B. therefore did not introduce her mental condition or well-being as an element of the claim. *Thiele v. Ortiz* (1988), 165 Ill. App. 3d 983, 520 N.E.2d 881; *Tylitzki v. Triple X Service, Inc.* (1970), 126 Ill. App. 2d 144, 261 N.E.2d 533; *Webb v. Quincy City Lines, Inc.* (1966), 73 Ill. App. 2d 405, 219 N.E.2d 165; *Laurent v. Brelji* (1979), 74 Ill. App. 3d 214, 392 N.E.2d 929.

■ Davis argues that the only aspect of her treatment placed in issue by the patient is the sexual relationship which is alleged to have occurred between Goldberg and the patient during his treatment of her. However, that limited disclosure does not in any way open the door to disclosure of records of all prior mental health treatment rendered to the patient by any and all therapists. (*Laurent v. Brelji*, 74 Ill. App. 3d at 219.) Where the complaint places an aspect of the services received at issue, as opposed to the patient's mental condition, only the treatment complained of requires disclosure. (*Laurent v. Brelji*, 74 Ill. App. 3d at 219.) C.B.'s testimony at the administrative hearing did not constitute an implied waiver of her patient privilege of nondisclosure.

Davis next contends that because only the patient can waive the privilege of nondisclosure (*Novak v. Rathnam*, 106 Ill. 2d at 482 (where waiver of patient privilege in former criminal prosecution constitutes waiver in subsequent proceeding); *Gottemoller v. Gottemoller*, 37 Ill. App. 3d at 695 (where wife voluntarily consented to release of records to opposing counsel); *People v. Newbury*, 53 Ill. 2d at 234 (where defendant called psychiatrist and elicits inculpatory statements he has waived privilege); *People v. Givans* (1967), 83 Ill. App. 2d 423, 228 N.E.2d 123 (where defense of insanity is raised); *People ex rel. Jones v. Jones* (1976), 39 Ill. App. 3d 821, 826-27, 350 N.E.2d 826 (where parties signed consent forms to release information to guardian)) and because the patient here has refused to consent to disclosure, the therapist is bound by her election (Ill. Rev. Stat. 1987, ch. 91½, par. 805(d)) and may not waive the privilege in any manner, by the therapist's express willingness to do so or by her testimony at this administrative hearing. The privilege of confidentiality is the patient's privilege and is not a privilege of confidentiality accruing to

the therapist. *Bland v. Department of Children & Family Services,* 141 Ill. App. 3d at 826-27.

Davis contends, therefore, that as C.B.'s therapist she is bound to nondisclosure. She cites section 10(a), which enunciates the privilege to refuse and to prevent disclosure as the privilege of the patient and of the therapist on the patient's behalf (Ill. Rev. Stat. 1987, ch. 91½, par. 810(a)) and argues that this statutory assurance of confidentiality "encourages complete candor between patient and therapist" and provides the motivation for patients in need of treatment to seek it. (*Novak v. Rathnam,* 106 Ill. 2d at 483.) Section 3 reiterates the confidentiality of the records with disclosure only upon patient consent or a disclosure excepted by the Act. (Ill. Rev. Stat. 1987, ch. 91½, par. 803.) Where the records are disclosed upon patient consent by one therapist to another, the receiving therapist is prohibited from redisclosing the information received. Ill. Rev. Stat. 1987, ch. 91½, par. 809.

■ Goldberg contends, however, that Davis has no statutory privilege to refuse to disclose the requested records because of the "patient-litigant" exception to confidentiality found in section 10(a)(1) in those circumstances where "the recipient introduces his mental condition or any aspect of his services received for such condition" in an administrative proceeding. (Ill. Rev. Stat. 1987, ch. 91½, par. 810(a)(1).) Goldberg argues that C.B. has claimed that his services in treating her were inappropriate and improper given her mental condition. The primary thrust of Goldberg's argument is that once the prior records became part of Davis' record on the patient, they are as subject to discovery as are her own records. Goldberg has not requested that Davis produce her records but only that she produce records of C.B.'s prior treatment by other therapists. He contends the patient placed her mental state and Goldberg's treatment of her condition in issue and therefore the prior records are relevant and their privileged status is lost. We have rejected this argument.

Goldberg also contends that clinical conclusions reached by Davis were based at least in part on the prior records and by her testimony Davis has waived her privilege under the statute which provides that the therapist may not disclose the patient's communications to her, nor any records, personal notes or diagnostic conclusions, without patient consent and such therapist records are confidential and are not subject to discovery in any proceeding. Ill. Rev. Stat. 1987, ch. 91½, par. 803.

■ An expert witness may give opinion testimony on the basis of reliable facts not in evidence without disclosing those facts, which

may include, among others, firsthand observation, experience, reports and opinions from other medical providers, so long as they are of a type reasonably relied on by experts in the field. (*Hatfield v. Sandoz-Wander, Inc.* (1984), 124 Ill. App. 3d 780, 787, 464 N.E.2d 1105; *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140.) Where the expert's opinion is based on the witness' own knowledge and experience, the testimony is admissible. *Gordon v. Chicago Transit Authority* (1984), 128 Ill. App. 3d 493, 503, 470 N.E.2d 1163.

Davis was asked to summarize the patient's history of treatment before she became Goldberg's patient as Davis knew it. She testified that she had requested prior records with the patient's consent, had received some of them, and her testimony was restricted to the fact of the prior treatment but she was not asked nor did she testify that the prior records formed the basis of her own diagnosis or opinion nor were they the basis for any part of the treatment she rendered. She related her understanding of the relationship between Goldberg and C.B. as related to her by the patient. She testified that she was familiar with the standards of responsibility of psychiatrist to patient in the Chicago area in 1987-88.

■ We conclude that by her testimony Davis made no responses to questions which in any way expanded the administrative inquiry beyond its defined limits of Goldberg's treatment of his bulimic patient and the alleged sexual improprieties, and accordingly, we find that clearly she has not waived the therapist-patient privilege of her patient.

■ We next consider whether there is an exception in the Act which can be invoked to force respondent to disclose psychiatric records of other prior treatment providers. Goldberg argues that in challenging the propriety of his treatment rendered to the patient, both Davis and the patient have placed C.B.'s mental condition and his services to her at issue, and accordingly, her treatment records and communications to therapists who treated her prior to 1987 are relevant, probative and admissible in the pending administrative hearing challenging his right to retain his license to practice medicine. (Ill. Rev. Stat. 1987, ch. 91½, par. 810(a)(1).) Section 9 of the Act provides that a therapist may disclose a record or communication without consent to persons conducting a peer review of the services being provided. Ill. Rev. Stat. 1987, ch. 91½, par. 809.

■ However, section 10 limits the disclosure without consent in a noncriminal proceeding by the following restriction: "[N]o record or communication between a therapist and a recipient shall be deemed

relevant for purposes of this subsection, except the fact of treatment, the cost of services and the ultimate diagnosis unless the party seeking disclosure of the communication clearly establishes *** a compelling need for its production." (Ill. Rev. Stat. 1987, ch. 91½, par. 810(a)(1).) Records and communications may be disclosed in a peer review of the therapist only to the extent that knowledge of the record or communication is essential to the purpose for which disclosure is made and only after notice to the patient is given. (Ill. Rev. Stat. 1987, ch. 91½, par. 803.) We are convinced that section 3 of the Act refers to disclosure of records and communications made by the patient to the therapist who is the subject of the peer review inquiry and not to other subsequent or prior treating therapists, and therefore, that section has no application to the facts of this appeal.

Section 10(a)(1) of the Act requires that such nonconsented disclosures may be ordered only if the following circumstances are present: (1) that the patient has introduced her mental condition or services received in treatment as an element of her claim; (2) if the court finds after an *in camera* inspection of testimony or other evidence that the material to be disclosed is relevant and probative to the inquiry and is otherwise not prejudicial or inflammatory; (3) that other evidence is otherwise unsatisfactory to establish acts sought to be established by the subject disclosure; (4) that disclosure is more important to the interests of justice than protection of the patient-therapist relationship or the patient or others who might be harmed by the disclosure; and (5) that petitioner seeking disclosure has clearly established a compelling need for production. Ill. Rev. Stat. 1987, ch. 91½, par. 810(a)(1).

We find that petitioner has failed to establish that any of the required statutory criteria are present in this case.

The patient is diagnosed as suffering from depression and bulimia. She has testified that this is so. Goldberg testified that he treated her for depression and bulimia. Davis is presently treating her for the same conditions. To place one's mental state in issue requires a difference of opinion as to the diagnosis of the mental condition being treated. Here there is no difference of opinion; they all agree on depression and bulimia.

The second requirement, that the court has made an *in camera* inspection of testimony or other evidence and finds that the material to be disclosed is relevant and probative to the inquiry and is not otherwise prejudicial or inflammatory, requires a consideration of the matter pending before the administrative hearing officer. Goldberg is charged with a violation of accepted standards of treatment for bulimia in 1987 in the Chicago area. He is also charged with personal

improprieties against his patient. No challenge has been made to his diagnosis of her condition as bulimia and depression. Records which detail the patient's diagnoses and treatment from 1977 to 1983, a period of time four or more years prior to Goldberg's treatment, are so remote as to be irrelevant and of no probative value in the pending administrative hearing, and under *Laurent v. Brelji* clearly would be prejudicial to the patient.

The third requirement, "that other evidence is unsatisfactory to establish acts sought to be established by the subject disclosure" is not met here, nor is the fifth requirement "that petitioner seeking disclosure has clearly established a compelling need for production." Here the complaint charges Goldberg with treatment irregularities in the form of home visitation and watching patient's behavior during a bulimic episode. He is also charged with personal and sexual improprieties with his patient. The treatment irregularities, alleged by the Department, *i.e.*, watching patient eat and then vomit, feeding her, and home visitation, are procedures easily measured against the accepted and standard treatments by other therapists for bulimia. The prior records would not offer enlightenment as to whether such treatment is appropriate nor would they shed any light on the propriety of the alleged sexual conduct.

The requirement of whether the disclosure is more important to the interests of justice than the protection of the patient-therapist relationship—the fourth requirement—also has not been met. Counsel for Goldberg, in declining the production of the prior records during Davis' testimony, specifically stated that she did not want to see them because producing the records was not in the patient's interest.

Twice during questioning of Davis, Goldberg's attorney specifically stated she did not wish to see the prior records. The transcript of that testimony disclosed the following interrogation of Goldberg's counsel on cross-examination:

"Q. Has [C.] ever told you anything about her feelings about eating in the presence of other people?

A. Yes. She has told me about that.

Q. Would you describe that, that [*sic*] please?

A. She sometimes has difficulty eating in the presence of other people.

Q. Do you know when those sometimes are?

A. We haven't talked about this for a long time, and I don't remember the details.

Q. Is there anything that would refresh your recollection with respect to that?

[Department's Counsel]: Objection, I will object now to the line of her questioning, which is totally off the issues.

[Goldberg's Counsel]: I am sorry, I can't hear you. Mr. [Department's Counsel].

[Department's Counsel]: The questioning of this witness is to her current therapeutic relationship with [C.B.]. It's totally outside the scope of the issues in this case.

What counsel is attempting to do is to get to patient records, which counsel knows full well are privileged. Clearly, those patient records would refresh someone's recollection, but clearly those are privileged; and clearly the question is beyond the scope of the issues in this case.

[Goldberg's Counsel]: I will clear up one aspect of that right now. I have no wish to see the records. If the doctor wishes to refer to them, she is welcome to do so without disclosing them to me.

[Hearing Officer]: That being said, the objection is overruled.

[Goldberg's Counsel]: Doctor, do you have your records with you?

A. No.

Q. Would you like to refer to them?

A. I don't have them with me.

Later, on redirect examination and at the conclusion of all her testimony, Davis was asked:

[Department's Counsel]: Doctor, based on your treatment of [C.] and your examination of treatment records that you had at your disposal, did [C.] exaggerate or distort any of her past treatments where you had the treatment records at your disposal?

[Goldberg's Counsel]: Inasmuch as, Mr. Hearing Officer, as we don't have those records at our disposal, and I furthermore do not wish to see them because I don't think that's in the patient's best interest, I don't believe that question should be permitted.

[Hearing Officer]: Sustained.

[Department's Counsel]: Mr. Hearing Officer, the question is in response to a question of this witness on cross, whether or not this witness believed that [C.] exaggerated or distorted the treatment she received from Dr. Goldberg.

[Goldberg's Counsel]: I don't believe I asked that.

[Hearing Officer]: The ruling isn't going to change.

[Department's Counsel]: Fine, I have no further questions of this witness.

[Hearing Officer]: Any recross?

[Goldberg's Counsel]: No, no questions. Thank you."

The witness was then excused and her testimony was concluded.

■ Goldberg's counsel twice disavowed any interest in the content of the prior records following Davis' testimony that the records were in her possession and no further reference was made to them in the administrative hearing. Goldberg then made a demand that these records be produced because they may be relevant to the question of the patient's credibility. We find that Goldberg's subsequent argument before the trial court and now on appeal that the records are now relevant and probative to the inquiry into his treatment of the patient in 1987 and his alleged improprieties with her and must now be produced was expressly waived by Goldberg at the administrative hearing.

Goldberg supports his argument that the patient's records may be relevant to her credibility by citing *People v. Phipps* (1981), 98 Ill. App. 3d 413, 424 N.E.2d 727, *People v. Lindsey* (1979), 73 Ill. App. 3d 436, 392 N.E.2d 278, *People v. Dace* (1983), 114 Ill. App. 3d 908, 449 N.E.2d 1031, and *People v. Di Maso* (1981), 100 Ill. App. 3d 338, 426 N.E.2d 972. In *Phipps*, the court found the privilege must give way to the right of confrontation and due process where the events complained of occurred while defendant was an employee at the Lincoln Mental Health Center and the Center's records were ordered produced. In *Lindsey*, because of many inconsistencies in defendant's testimony and his mental retardation, his records were ordered produced for a determination of his credibility and to assess his ability to observe, recall and relate events to which he testified. In *Dace*, where an accomplice witness was involuntarily committed to a mental hospital less than two years before the crime with which defendant was charged, the mental history of the witness was relevant to his credibility and the trial court was required to conduct an *in camera* hearing with counsel present to determine what information from the records was relevant or material to impeachment of the witness.

In *Di Maso*, the court held that the State's interest in the assault victim's right to confidentiality of his Madden Mental Health records of his treatment at the center a few months prior to the assault must give way to the accused's right to cross-examine in a felony prosecution where it is relevant to witness credibility based on alleged blackouts following episodes of drinking and drug abuse.

Davis cites *People v. Walton* (1982), 107 Ill. App. 3d 698, 701, 437 N.E.2d 1273, where the court found that witness identification of the accused revealed sufficient manifestations of reliability where he had ample opportunity to view the accused and his attention was focused on him at the time of the robbery and he provided an accurate description of the events and the offender. The *Walton* court held that disclosure of relevant portions of a witness' mental health records to protect a defendant's rights of due process and confrontation is not so broad a rule as to negate the necessity of establishing the pertinence of the witness' history to the question of his or her credibility. (*Walton*, 107 Ill. App. 3d at 703.) The court found that defendant did not make a sufficient showing of relevance and refused to order disclosure.

Both Goldberg and Davis rely on the court's analysis in *Laurent v. Brelji* in support of their opposite contentions on the issue of the privilege. That case dealt with civil service discharge proceedings against an employee at the Chester Mental Health Center for alleged instances of his harassment and abuse of a patient. The hearing officer issued a subpoena to produce the patient's psychiatric records in the possession of the center's superintendent for *in camera* inspection and possible disclosure of those documents found to have probative value. The physician-superintendent of the center asserted the general privilege against disclosure and argued that no statutory exception of section 10(a)(1) applied.

The court held that on the record before it, the issues before the investigating body related directly to incidents which occurred during the patient's hospitalization at the Center and that the patient had introduced an aspect of the services he received there during treatment for his mental condition, and accordingly, an exception to the privilege of nondisclosure applied. We find instructive the court's analysis, which stated:

> "The inquiry of whether given information is subject to disclosure does not end with the determination that it is relevant. Implicit in every testimonial privilege is the assumption that the privileged matter may indeed be highly probative of the issues in dispute. Despite any relevance, however, the promotion and protection of certain relationships is deemed to be of greater value than the unqualified disclosure of pertinent information incident to individual disputes.
>
> Presumably, the patient in psychotherapeutic treatment reveals the most private and secret aspects of his mind and soul. To casually allow public disclosure of such would desecrate any

notion of an individual's right to privacy. At the same time, confidentiality is essential to the treatment process itself, which can be truly effective only when there is complete candor and revelation by the patient. Finally, confidentiality provides proper assurances and inducement for persons who need treatment to seek it." (*Laurent v. Brelji*, 74 Ill. App. 3d at 217.)
The court then stated its conclusion that, on the record before it, disclosure was required but stated that this ruling

"in no manner implies that a person, merely by presenting himself as a witness, must run the risk of having his entire mental history drug out and exposed before a public hearing for the ostensible purpose questioning his perceptive capabilities." *Laurent v. Brelji*, 74 Ill. App. 3d at 219.

We conclude that that is exactly what is at issue here. The sole question before the hearing officer was whether Goldberg's treatment of this patient was appropriate and within acceptable medical standards or whether his conduct was outside the limits of appropriate treatment so as to warrant suspension or revocation of his license to practice medicine. No inquiry into prior treatment remote in time would satisfy the requirement that Goldberg must show a compelling need for such disclosure nor its relevance to the inquiry before the Department as to the propriety of his actions or treatment.

Goldberg contends that the prior records are necessary to challenge the patient's credibility and the validity of the charges against Goldberg. We reject Goldberg's contention. Validity of the charges can be determined based on a recital of the questioned events, a determination by the hearing officer of the patient's present credibility, based on current evidence and on application of these events to acceptable medical standards of treatment and behavior. The patient here has not raised her mental condition as an issue by appearing as a witness. She has testified to the fact of Goldberg's treatment in a current time frame. Her credibility is not dependent on her entire prior mental history, and she is entitled to invoke the privilege of nondisclosure here. We uphold Davis' refusal to produce the records.

For all of the foregoing reasons, we reverse the order of the trial court requiring production of the records of prior therapists in Davis' possession for *in camera* inspection and for production in response to the administrative hearing officer's subpoena.

Reversed.

RAKOWSKI, P.J., and EGAN, J., concur.