In re TRINO J. GIMINEZ *et al.*, Minors.—(THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TRINO GIMINEZ *et al.*, Defendants-Appellants.)

(No. 74-88; 

Third District—November 22, 1974.

James Geis and Mark Burkhalter, both of State Appellate Defender's Office, of Ottawa, for appellants.

David DeDoncker, State's Attorney, of Rock Island (Richard F. Doerr, of counsel), for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

In January 1973, in the Circuit Court of Rock Island County, minors Trino Giminez and Alvin Lacefield were adjudged delinquent and made wards of the court. Both were placed on probation with their parents. On December 4, 1973, after a subsequent petition for detention had been filed, an order committing both juveniles to the Department of Corrections, Juvenile Division, was entered. Both appeal, contending that the trial court's failure to provide appointed counsel at the detention hearing constituted a violation of their right to counsel and prejudiced their defense.

On October 18, 1973, James Watson, a minor on parole from the Illinois Department of Corrections, was taken to the East Moline Police Station for questioning concerning a number of home burglaries in the East Moline-Silvis area. Watson was advised of his rights several times and, after first refusing, signed a statement waiving his rights.

Watson then made a written statement confessing to his involvement in the burglaries. In his statement Watson also implicated minors Trino Giminez and Alvin Lacefield in several of the home burglaries. Giminez and Lacefield had both been declared delinquent in January, 1973, and were both on probation with Sara Fields, Giminez's natural mother, and her husband. Their probations were the result of their involvement in burglaries in the East Moline area in late 1972.

Later on the same day, October 18, Giminez and Lacefield were taken to the East Moline Station. They were advised of their rights. After signing a statement waiving their rights both boys made statements admit-

ting entering homes in East Moline and Silvis. Both boys remained in custody.

On October 22, 1973, Giminez and Lacefield appeared at the detention hearing (Ill. Rev. Stat. 1973, ch. 37, par. 703—6) in the Rock Island County Court on a petition by Andrew Jackson, their probation officer, to continue to detain the boys in custody pending a further dispositional hearing. Neither minor was represented by counsel nor did the court advise them of their right to be represented or their right to have counsel appointed in the event of their indigency. The court also failed to advise the minor's parents of their right to be represented and their right to have counsel appointed. Testimony concerning the boys' confession was presented by East Moline police officers. The petition was granted and the minors remained in custody.

Nine days later the public defender was appointed to represent the minors.

A hearing on a motion by defendants to suppress their confessions was held on November 16, 1973. The motion was denied.

On December 4, 1973, a dispositional hearing was held and Alvin Lacefield and Trino Giminez were committed to the Illinois Department of Corrections, Juvenile Division.

There are not, as yet, any Illinois cases delineating the consequences of failure to provide a minor with counsel at a detention hearing. At the adjudicatory hearing which may follow the right to counsel is constitutionally mandated. *In re Gault*, 387 U.S. 1, 18 L.Ed.2d 527, 87 S.Ct. 1428.

A minor's right to counsel at juvenile proceedings and the right to have counsel appointed is provided by section 1—20 (1) of our Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 701—20(1)). The court has the mandatory duty at the first appearance of the minor, his parents, guardian custodian or responsible relative to explain the nature of the proceedings and to inform the parties of their rights including the right to counsel. (Par. 701—20(3).)

■■ A detention hearing has been compared to a preliminary hearing in a criminal case where evidence is taken to determine whether probable cause exists to hold the accused for grand jury action. (*People v. DePoy*, 40 Ill.2d 433, 436.) If probable cause is not found in either hearing, the accused must be discharged.

In *People v. Adams*, 46 Ill.2d 200, the court held that a preliminary hearing is a "critical stage" of the criminal process so as to give rise to a constitutional right to representation. Quoting from *Coleman v. Alabama*, 399 U.S. 1, 26 L.Ed.2d 387, 90 S.Ct. 1999, the court stated,

" 'First the lawyer's skilled examination and cross-examination of

witnesses may expose fatal weakness in the State's case, that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination of bail.' " [1] (46 Ill.2d 200, 206-07.)

The same reasoning would certainly apply to a detention hearing where a child's life is disrupted; he may, in fact, not be an offender and so feels he is being punished unfairly; he is forced to associate with children who may be far more disturbed than himself; the custodial facilities may be inadequate and overcrowded; and his ability to participate in the preparation of his defense is curtailed.[2] The National Crime Commission study in 1967 in juvenile delinquency showed that there was excessive reliance on detention in routine cases in which there was no danger to the welfare of the juvenile or to the community from releasing him and that detention was often used for shock effect.[3] Further the prosecutor is now always present to prove his case for detention.

■■ Requiring the court to inform an alleged delinquent (and his parents) against whom a detention petition has been filed, that he has a right to counsel or if they are unable to afford counsel, that counsel will be appointed to represent the child, is, we think, mandated by the statute. We further believe that the right to counsel must be competently and intelligently waived and where waiver is relied on, the court should affirmatively find as a fact, that by reason of age, education and information, and all other pertinent facts, the minor was able to and did make an intelligent waiver.

■■ The record in the present case indicates that absence of counsel at the detention hearing may have been prejudicial to the defendants.

---

[1] Detained juveniles are not allowed bail in Illinois.

[2] See Mora, *Juvenile Detention: A Constitutional Problem*, Urban Lawyer (Summer 1969).

[3] President's Commission on Law Enforcement and Administration of Justice, Task Force Report on Juvenile Delinquency and Youth Crime.

The probable cause determination was primarily based on testimony as to a confession. There was no opportunity for effective cross-examination. Counsel was not afforded an early opportunity to appraise the State's case and prepare a defense. Absence of counsel precluded the possibility of effective argument to allow the minors to remain at home until the adjudicatory hearing and to better assist counsel. Pursuant to the procedure in *Coleman, supra,* the cause is remanded to the Circuit Court of Rock Island to determine whether petitioners were prejudiced by absence of counsel at the detention hearing.

Remanded with directions.

STOUDER and ALLOY, JJ., concur.