*In re* M.L.K., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. M.L.K., Respondent-Appellant).

Fourth District   No. 4—84—0801

Opinion filed September 16, 1985.

Daniel D. Yuhas and Judith N. Kirby, both of State Appellate Defender's Office, of Springfield, for appellant.

Paul Lee Stone, State's Attorney, of Sullivan (Robert J. Biderman and Rebecca L. White, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

After detention and adjudicatory hearings, the trial court declared that respondent, M.L.K., was a delinquent minor and placed him on two years' probation with the following conditions: performance of 40 hours of public service; payment of restitution; a 10 p.m. curfew; regular school attendance; and, the maintenance of at least a "C" average. On appeal, the respondent asserts the trial court committed reversible error in failing to appoint counsel to represent him at the detention hearing. He also asserts the trial court abused its discretion in ordering him to maintain a "C" average in school.

On September 2, 1984, the State's Attorney filed a petition, requesting that the respondent be adjudicated a delinquent minor. The petition alleged the respondent had committed the offense of burglary on August 9, 1984, and again on September 6, 1984. On September 28, the State's Attorney filed a second petition, alleging that the re-

spondent had committed a third burglary on September 25.

At a detention hearing on September 28, deputy sheriff Harold Morgan testified the respondent had committed burglary in the boys' locker room at Lovington High School on September 25. Morgan testified a high school coach observed the respondent reaching into the pockets of pants in a locker. The respondent handed the coach $29 which he stated he had taken from other student's lockers. When Morgan later questioned him, the respondent admitted he had entered the locker room through a window and with the intent to commit theft. Morgan testified the respondent had also admitted to committing burglaries at a business and a gas station in Lovington. Morgan also stated the respondent had previously been declared delinquent for committing criminal damage to property and for unlawful consumption of alcohol by a minor.

After Morgan testified, the court asked whether respondent or his mother wanted to present any evidence. Both declined. The court then informed the respondent that he had a right to be represented by an attorney at future hearings. The court told him the name of an attorney who was appointed to represent him. The court ordered the respondent be detained until a further hearing could be held.

The respondent moved to suppress his admissions on the ground that police officers had violated his fourth amendment rights. At a hearing on October 12, the respondent, his mother, stepfather, and girlfriend testified as to events on two occasions when officers transported the respondent to the police station for questioning. The respondent admitted he had confessed to all three burglaries. Morgan again testified as to the high school coach's observations and the respondent's admissions. Chief of Police Mark Newberry gave similar testimony. The court denied the respondent's motion to suppress. The court also decided to release the respondent into his parents' custody. On October 19, the court held an adjudicatory hearing. The parties stipulated that Morgan and Newberry would give testimony identical to that given at the suppression hearing. The court held the respondent was delinquent.

■ The respondent argues the court denied his right to counsel by holding the detention hearing before appointing counsel or advising him of his rights. A juvenile proceeding is not a criminal prosecution, but to accord juveniles fundamental fairness, certain due process safeguards normally associated with criminal proceedings have been extended for their protection. (*In re S.R.H.* (1983), 96 Ill. 2d 138, 449 N.E.2d 129.) In the seminal case of *In re Application of Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428, the United States Su-

preme Court decided the fourteenth amendment required juveniles be represented by counsel during proceedings to determine delinquency. The court, however, did not decide at what point that right to counsel attaches.

In *In re Giminez* (1974), 23 Ill. App. 3d 583, 319 N.E.2d 570, the court faced a situation almost identical to the present one. In deciding whether the failure to provide counsel at a detention hearing was a denial of due process, the court followed the "critical stage" analysis used in criminal proceedings. The court compared a detention hearing to a preliminary hearing, a critical stage in the criminal process, which gives rise to the right to counsel. The court decided that counsel at a detention hearing could perform many of the same functions as counsel for an accused at a preliminary hearing. These functions were outlined in *Coleman v. Alabama* (1970), 399 U.S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999. The *Giminez* court concluded:

> "The record in the present case indicates that absence of counsel at the detention hearing may have been prejudicial to the defendants. The probable cause determination was primarily based on testimony as to a confession. There was no opportunity for effective cross-examination. Counsel was not afforded an early opportunity to appraise the State's case and prepare a defense. Absence of counsel precluded the possibility of effective argument to allow the minors to remain at home until the adjudicatory hearing and to better assist counsel. Pursuant to the procedure in *Coleman, supra,* the cause is remanded to the Circuit Court of Rock Island to determine whether petitioners were prejudiced by absence of counsel at the detention hearing." *In re Gomez* (1974), 23 Ill. App. 3d 583, 586-87, 319 N.E.2d 570, 573.

The State relies on *People ex rel. Jones v. Jones* (1976), 39 Ill. App. 3d 821, 350 N.E.2d 826. The *Jones* court held the failure to advise parents of their right to counsel at a detention hearing in a proceeding to terminate parental rights was not reversible error. The court stated it found no obvious prejudice as in *Giminez.* The court decided the parents had been adequately represented at the adjudicatory stage, where sufficient proof was presented to support the trial court's findings. The court also noted the parents had not availed themselves of the procedure under section 3—6(3) of the Juvenile Court Act. (Ill. Rev. Stat. 1983, ch. 37, par. 703—6(3).) That section provides that if counsel is not present at the detention hearing, he may file an affidavit supporting this fact and obtain a rehearing. Although *Jones* is informative on the issue before us, we note that the

same due process considerations present in a delinquency proceeding are not necessarily present in a proceeding to terminate parental rights. See *Lassiter v. Department of Social Services* (1981), 452 U.S. 18, 68 L. Ed. 2d 640, 101 S. Ct. 2153.

Unlike *Giminez*, we find no reason to remand this case.

" '[A] reviewing court is permitted to scrutinize the possibility of prejudice arising from the diminution of tactical alternatives available to subsequently appointed counsel and, if such possibility is found beyond a reasonable doubt merely speculative or hypothetical, to declare the absence of counsel harmless error.' " *Moses v. Helgemoe* (1st Cir. 1976), 562 F.2d 62, 64, quoting *Chin Kee v. Commonwealth* (1st Cir. 1969), 407 F.2d 10, 14.

In *Coleman*, the court decided an accused had a right to counsel at a preliminary hearing because counsel could perform four functions at such a hearing. First, he may expose fatal weaknesses in the State's case so that the accused will not be bound over. Second, through skilled interrogation, counsel can fashion a vital impeachment tool for use in cross-examination at trial. Third, counsel can more effectively discover the State's case so that preparation of a proper defense at trial will be possible. Fourth, counsel can be influential in matters such as bail, or the necessity of an early psychiatric examination. *Coleman v. Alabama* (1970), 399 U.S. 1, 9, 26 L. Ed. 2d 387, 397, 90 S. Ct. 1999, 2003.

The respondent points out that, like *Giminez*, the probable cause determination was based largely on testimony as to his confessions. He complains because the veracity of this evidence was not challenged at the detention hearing. The evidence offered at the adjudicatory hearing was largely identical to that offered at the detention hearing. At the adjudicatory hearing, the applicable standard required proof beyond a reasonable doubt. (*In re Gonzalez* (1981), 95 Ill. App. 3d 750, 420 N.E.2d 720.) The respondent's failure to undermine the State's case in the adjudicatory hearing was a fair indication that he clearly would have been unable to prevent the State from meeting its lesser burden at the detention hearing. *Moses v. Helgemoe* (1st Cir. 1976), 562 F.2d 62, 64.

Counsel's inability to lay a basis for later impeachment of Morgan did not prejudice the respondent. Morgan's testimony was entirely consistent with his later testimony as well as Newberry's. Counsel was given an opportunity to lay a foundation for later impeachment when questioning Morgan at the suppression hearing but failed to do so. Finally, the respondent did not even require that Morgan testify at the adjudicatory hearing, but instead stipulated as to his testimony.

■ The respondent's motion to suppress and the transcript of the hearing on that motion demonstrate that counsel had discovered the basis of the State's case well in advance of the adjudicatory hearing.

The respondent complains because counsel was not present at the detention hearing to argue that the detention was not necessary. Section 3—6(2) of the Act allows the court to prescribe detention when it finds an immediate and urgent necessity to protect the minor or the person or property of another. Factors to be considered include: the nature and seriousness of the alleged offense; the minor's record of delinquency offenses, including whether the minor has delinquency cases pending; and, the availability of noncustodial alternatives, including the presence of a parent or other responsible relatives able and willing to provide supervision and care for the minor. (Ill. Rev. Stat. 1983, ch. 37, par. 703—6(2).) The respondent had allegedly committed three burglaries in less than two months. He was still on probation from his two previous offenses. He committed the third burglary while the petition on the first two was still pending. Despite his parents' knowledge of the respondent's activity, they were unable to control him. Counsel could have had little influence in arguing that detention was not proper under these circumstances. More importantly, the respondent's detention did not affect his ability to assist counsel in the preparation of his defense.

■ Under section 3—6(3) the respondent could have been granted a rehearing even without demonstrating any prejudice. His failure to do so is a strong indication of the lack of any possible prejudice. It is always possible to speculate that counsel might have accomplished something at a detention hearing. A claim of prejudice, however, cannot be founded on mere conjecture. (*People v. Lewis* (1975), 60 Ill. 2d 152, 330 N.E.2d 857.) The respondent suffered no possible prejudice other than that which we find beyond a reasonable doubt to be merely speculative or hypothetical. *Moses v. Helgemoe* (1st Cir. 1976), 562 F.2d 62, 65.

■ The respondent also objects to the court's requirement that he maintain a "C" average as a condition of probation. He argues this condition is not reasonably related to his offenses. We disagree. At the dispositional hearing, the respondent, his parents, stepfather and friends all testified the respondent got into trouble because of the bad influence of three other individuals. At least two of these three were not in school, and the respondent saw them when he went uptown at night. After being released from detention, the respondent stopped seeing these "bad influences" and usually stayed at home at night to study. He also saw other friends, whom the witnesses described as

"good influences." These friends were all schoolmates. The trial court's order requires the respondent to continue to direct his attention toward school and "good influences" and reduces the amount of time that he has to see the "bad influences." The respondent further argues the court's order could result in revocation of his probation through no fault of his own. He asserts he may be incapable of maintaining a "C" average despite his best efforts. We find this difficult to accept. Furthermore, an inherent implication in the court's order is that noncompliance on reasonable grounds will be permitted. (*In re K.M.B.* (1983), 117 Ill. App. 3d 89, 452 N.E.2d 876.) Accordingly, we read the court's order as simply requiring the respondent to make all reasonable efforts to maintain a "C" average. With respect to the requirement to maintain a "C" average, we deem it necessary to add that trial courts should avoid the practice of couching an order on a minor to make a strong attempt to achieve a result in terms of an absolute requirement that the result be obtained. Such a practice tends to deprecate the effectiveness of an absolute order on a minor to do something which is within the power of the minor to perform.

For these reasons, the order of the trial court is affirmed.

Affirmed.

GREEN, P.J., and MORTHLAND, J., concur.