2016 IL App (1st) 152504
No. 1-15-2504
Opinion filed March 18, 2016

FIFTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* N.H., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| v. | ) | |
| | ) | No. 14 JD 2722 |
| N.H., | ) | |
| | ) | The Honorable |
| Respondent-Appellant). | ) | Terrence V. Sharkey, |
| | | Judge, presiding. |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Reyes concurred in the judgment and opinion.
Justice Lampkin specially concurred, with opinion.

**OPINION**

¶ 1 Respondent N.H.[1] appeals an adjudication of delinquency and dispositional order of probation. The State charged him with robbery, aggravated battery, battery, theft from person and theft; the trial court found him guilty after an adjudication hearing of all charges, and sentenced him to five years of probation.

¶ 2 On this direct appeal, respondent claims: (1) that the State failed to prove him guilty beyond a reasonable doubt of aggravated battery, battery or robbery, and, thus, this court should reverse his aggravated battery and battery convictions and reduce his robbery conviction to theft; (2) that subjecting juveniles who have been adjudicated delinquent of a forcible felony to a mandatory minimum sentence of five years of probation violates the equal protection clause, where juveniles who are adjudicated delinquent of other felonies are not subject to the same mandatory sentence; (3) that the trial court abused its discretion by ordering respondent to maintain a "C average" in school as a condition of his probation; and (4) that the trial court's order should be corrected to reflect adjudications for robbery and aggravated battery, as the adjudications for the lesser offenses of theft and battery violate the one act, one crime rule.

---

[1]Since respondent has an unusual first name, this opinion refers to him only by his initials. *People v. Burgess*, 2015 IL App (1st) 130657, ¶ 6 (we referred to a minor only as "the minor" in order to protect his anonymity).

¶ 3        With respect to respondent's fourth claim, the State observes that the trial court merged the theft and theft from person counts with the robbery conviction and also merged the battery count with the aggravated battery conviction, leaving only the offenses of robbery and aggravated battery existing. After merging the counts, the trial court stated: "So the only convictions will be— now, will be the robbery and \*\*\* the aggravated battery." However, adjudications of delinquency were entered on all counts in the trial court's written order.[2] *People v. Maxey*, 2015 IL App (1st) 140036, ¶ 46 (when the written order and the oral pronouncement of the trial court conflict, the oral pronouncement becomes the judgment of the court, and the mittimus must be corrected to reflect it); *People v. Jones*, 376 Ill. App. 3d 372, 395 (2007) ("When the oral pronouncement of the court and the written order are in conflict, the oral pronouncement controls."). The State joins respondent in asking us to vacate respondent's adjudications for theft and battery and to correct the order. Thus, we correct the trial court's written order to reflect adjudications solely for robbery and aggravated battery. *People v. J.F.*, 2014 IL App (1st) 123579, ¶ 18 (appellate court ordered a juvenile's adjudication order corrected); *Maxey*, 2015 IL App (1st) 140036, ¶ 46 (appellate court ordered the

_____

[2] The trial court's written order, entered June 29, 2015, stated that respondent was "[g]uilty of count(s) 1-5 of the petition," which were all the counts in the State's petition for adjudication of wardship, filed July 10, 2014.

mittimus corrected); *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 117 (same); *People v. Jones*, 397 Ill. App. 3d 651, 656 (2009) (same).

¶ 4    However, we do not find respondent's other claims persuasive for the reasons explained below.  We affirm and order the adjudication order corrected.

¶ 5                                BACKGROUND

¶ 6                            I. Petition for Wardship

¶ 7    In the States' petition for adjudication of wardship. the State charged respondent with aggravated battery and robbery, among other charges.

¶ 8    With respect to the aggravated battery charge, the State alleged that, while the victim was "on a public way, the above-named minor knowingly made physical contact of an insulting or provoking nature to [the victim], in that he pushed her in the upper body."

¶ 9    With respect to the robbery charge, the State alleged that "the above-named minor knowingly took property, to wit:   wallet[3] and United States currency, from the person or presence of [the victim], by the use of force or threatening the imminent use of force."

---

[3] The victim testified at the adjudication hearing that defendant grabbed her wallet out of her hand.  She did not testify that she had a purse or that the wallet was in her purse.  Respondent's stepfather also testified concerning a wallet. However, respondent testified at the hearing that he observed "a male [who] grabbed the victim's purse and ran off into the alley."  Thus, we use the term "wallet" when describing the victim's and the stepfather's testimony, but "purse" when describing respondent's testimony.

¶ 10                    II. Evidence at the Adjudication Hearing

¶ 11        At the adjudication hearing, the State's case in chief included the testimony of the victim and two police officers. Respondent offered an alibi defense, which he supported with his own testimony and that of his stepfather. In rebuttal, the State recalled police officer Povsner. We summarize this evidence below.

¶ 12                              A. The Victim

¶ 13        Regina Warren, an 18-year-old student, testified that, on July 9, 2014, at 8 p.m., she and a friend were walking near 54th Street and Ashland Avenue in Chicago on the way to her sister's birthday party. Respondent was walking behind her with three other people and attempting to make conversation with her. Warren and her friend did not respond, but Warren turned around and observed respondent who was a few feet behind her. Respondent followed Warren and her friend for about a block and a half, when he then stated: "I know you hear me." A few seconds later, respondent pushed Warren in her upper back from behind which caused her to stumble. Warren then turned around for a second time and observed respondent as he grabbed her wallet out of her hand and ran. Respondent's friends also fled, and one of them was on an electric scooter.

¶ 14    Warren testified that she asked a person on a nearby porch to call the police, who arrived in a few minutes. She told the police what had occurred, and a police officer drove her around in a police vehicle looking for the offender. Warren described the offender to them as a 15- year-old African-American male in jeans. After driving around for a few minutes, Warren observed respondent on a scooter and told the officers that he was the "main one that did it." When asked what her wallet contained, Warren testified: "I had ten dollars, a seven-day and a couple of other things."[4] She explained: "A seven-day is a bus pass that I use to get around." Warren made a positive identification of respondent in court.

¶ 15                    B. Chicago Police Officer's Testimony

¶ 16    Chicago police officer Povsner[5] testified that, on July 9, 2014, he and his partner, Officer Tracey Knightly, were flagged down near 53rd Street and Racine Avenue by a friend of the victim. Warren then told him that someone had pushed her from behind and stolen her wallet. Warren described the offender as a young, short black male teenager, wearing a multi-colored shirt. After touring the area, Officer Povsner observed a young black male on a

---

[4] As Chicago police officer Weber subsequently testified, no proceeds from the incident were recovered from respondent's person.

[5] Officer Povsner did not state his first name.

scooter who matched this description a block and a half from where Povsner was originally flagged down, so Povsner stopped him and started talking to him. Povsner testified:

> "What happened next was a squad car pulled up, two officers and the victim in the back seat of the squad car, the victim that we had just talked to, and while we were talking to him, they told us that's—that's him; that's the offender."

¶ 17    Chicago police officer Weber[6] testified that, on July 9, 2014, he responded to a call concerning a theft or robbery near the 5400 block of Racine Avenue. The victim provided a description of a male on a scooter, but Weber did not recall the description. Weber placed the victim in the back of his police vehicle and started touring the area looking for the offender. He stopped when he observed that other officers had detained a suspect, whom the victim identified.

¶ 18                    C. The Testimony of Respondent's Stepfather

¶ 19    After the State rested, respondent's motion for a direct finding was denied. Respondent's stepfather[7] testified on his behalf. The stepfather testified

---

[6]Officer Weber also did not state his first name.

[7]In order to protect the minor's privacy, we refer to this witness only as the respondent's stepfather, rather than by his name. We also decline to provide the

that, on July 9, 2014, at 8 p.m., he was outside his house with respondent and two other children and the stepfather was placing gas in respondent's motorized scooter. He observed two black males and two black females walking together down the street toward 54th Street and passing his house. One of the females was the victim, Regina Warren. One of the males grabbed Warren's wallet and ran through an alley. The stepfather did not observe the male push Warren. He described the offender as an African American 5 feet 9 inches tall, weighing 130 pounds, wearing a white shirt and blue pants. The stepfather's neighbor called the police. When the police arrived, the stepfather informed the police officers what he had observed and gave them a description of the offender. The respondent began riding his scooter and remained within the sight of the stepfather. The officers detained respondent and brought him back to his stepfather.

¶ 20    The stepfather testified that he observed the offender later and took a photograph of the offender on his cell phone two weeks after the incident. The stepfather then went to the police station but an officer "told [him] to leave the

---

street address of the stepfather's home. *Burgess*, 2015 IL App (1st) 130657, ¶ 6 ("The minor's relatives are referred to by their familial connection to the minor, such as 'the father' or 'the uncle.' This is done because the initials of the family members could be used to identify the victim, if viewed by someone familiar with the family.").

investigation alone," so he deleted the photograph from the cell phone a few days later.

¶ 21                     D. Testimony of Respondent

¶ 22          Respondent testified that he was 13 years old on July 9, 2014.  At 8 p.m., he was outside his house with his stepfather working on his scooter, when he observed a group of two males and two females walking past them.  One of the males grabbed a purse from one of the females and ran into the alley.  The victim ran toward the house of a neighbor who called the police.  Respondent did not recognize any members of the group. After the incident, respondent was riding on his scooter when police officers stopped and searched him. After another police vehicle arrived, he was handcuffed and arrested.  Respondent denied robbing the victim and testified that he told Officer Povsner who the real offender was but that the officer did not listen.

¶ 23          In rebuttal, the State recalled Officer Povsner who testified that he spoke with respondent but did not recall whether respondent told him that someone else robbed the victim. Officer Povsner also did not recall speaking with respondent's stepfather.

¶ 24                     III. Adjudication and Sentencing

¶ 25          The trial court adjudicated respondent delinquent on all counts.  The trial did not find the testimony of respondent and his stepfather credible and

believed the victim's testimony. Respondent filed a posttrial motion to reconsider which the trial court denied.

¶ 26    At sentencing, the trial court stated that the robbery count (count I) would merge with the theft and theft from person counts (counts II and III) and that the aggravated battery count (count V) would merge with the battery count (count IV). The trial court stated: "So the only convictions will be—now, will be the robbery and *** the aggravated battery." The court sentenced respondent to five years of probation, which the statute made mandatory when a conviction is for a forcible felony. 705 ILCS 405/5-715(1) (West 2014) ("the period of probation for a minor who is found to be guilty for an offense which is *** a forcible felony shall be at least 5 years"). Respondent's conditions of probation included: 25 hours of community service; no gang, gun or drug contact; participation in any Treatment Alternatives for Safe Communities (TASC) evaluation recommendations; mandatory school attendance and the maintenance of a "C average" in school. Only the last condition of the sentence is at issue on this appeal.

¶ 27    Respondent filed a timely notice of appeal, and this direct appeal followed.

¶ 28                              ANALYSIS

¶ 29          On this direct appeal, respondent claims: (1) that the State failed to prove him guilty beyond a reasonable doubt of aggravated battery, battery and robbery, and thus this court should reverse his aggravated battery conviction and reduce his robbery conviction to theft; (2) that subjecting juveniles who have been adjudicated delinquent of a forcible felony to a mandatory minimum sentence of five years of probation violates the equal protection clauses of the federal and Illinois constitutions, where juveniles who are adjudicated delinquent of other felonies are not subject to the same mandatory sentence; (3) that the trial court abused its discretion by ordering respondent to maintain a "C average" in school as a condition of his probation; and (4) that the trial court's order should be corrected to reflect adjudications for only robbery and aggravated battery.

¶ 30          For the reasons already stated above, we correct the trial court's adjudication order to reflect adjudications for robbery and aggravated battery. However, for the reasons stated below, we do not find respondent's other claims persuasive and affirm his adjudication and sentence.

¶ 31                          I. Sufficiency of the Evidence

¶ 32          Respondent's first claim is that the State's evidence was insufficient to convict him of aggravated battery or robbery beyond a reasonable doubt.

¶ 33　　　　　When a minor respondent challenges the sufficiency of the evidence, our standard of review is whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Cf. People v. Davison*, 233 Ill. 2d 30, 43 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). When considering a challenge to an adjudication of a minor based on the sufficiency of the evidence, it is not the role of the appellate court to retry a minor respondent. *Cf. People v. Hall*, 194 Ill. 2d 305, 329-30 (2000). Only where the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the minor's guilt will a finding of guilty be set aside. *Cf. Hall*, 194 Ill. 2d at 330.

¶ 34　　　　　To prove respondent guilty of battery, the State is required to prove respondent knowingly and without legal justification either (1) caused bodily harm to another individual or (2) made physical contact of an insulting or provoking nature. See 720 ILCS 5/12-3(a) (West 2014). To prove aggravated battery on a public way, the State's required to prove either respondent or the victim was "on or about a public way," when the battery was committed. 720 ILCS 5/12-3.05(c) (West 2014).

¶ 35　　　　　To prove robbery, the State is required to prove that respondent knowingly took property from the person or presence of another by the use of

force or by threatening the imminent use of force. See 720 ILCS 5/18-1(a) (West 2014). The required force or threat of force must either precede or be contemporaneous with the taking of the victim's property. *People v. Johnson*, 2015 IL App (1st) 141216, ¶ 29 (quoting *People v. Dennis*, 181 Ill. 2d 87, 101-02 (1998)).

¶ 36    Respondent argues that the State failed to prove either: (1) the physical contact required for aggravated battery; or (2) the use of force required for robbery. For both these crimes, respondent argues that the State's evidence was insufficient because the victim testified that she was pushed from behind and thus did not observe who was pushing her at the moment of contact. As a result, respondent argues that her identification of respondent as her assailant was inherently incredible.

¶ 37    It is the job of the fact finder to make the determinations concerning the credibility of the witnesses who testify, and the fact finder's credibility determinations are entitled to great deference and rarely will be disturbed on appeal. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009); *People v. Cerda*, 2014 IL App (1st) 120484, ¶ 156; *People v. Williams*, 2013 IL App (1st) 111116, ¶ 76; *People v. Bowie*, 36 Ill. App. 3d 177, 180 (1976). This deferential standard of review exists because the fact finder is in a superior position to determine and weigh the credibility of the witnesses, observe

witnesses' demeanor and resolve conflicts in their testimony. *People v. Jones*, 215 Ill. 2d 261, 268 (2005); *Cerda*, 2014 IL App (1st) 120484, ¶ 156; *People v. Lomax*, 2012 IL App (1st) 103016, ¶ 19.

¶ 38      In the case at bar, the victim testified that she observed respondent twice: once when he was following behind her; and once after she was pushed as he was taking her wallet from her hand. She testified that respondent was attempting to make conversation with her and her friend and, when they did not respond, respondent stated "I know you hear me." Then the victim felt a shove in her upper back, she turned and observed respondent grabbing her wallet out of her hand. Based on this testimony and that of the police officers, and viewing it in the light most favorable to the State, we find that a rational trier of fact could have found the elements of force and contact beyond a reasonable doubt. *Davison*, 233 Ill. 2d at 43 (quoting *Jackson*, 443 U.S. at 319). The trial court, who had the opportunity to view the demeanor of the witnesses and to hear their testimony, found the victim credible but did not find respondent or his stepfather credible.

¶ 39      Thus, we conclude that there was proof beyond a reasonable doubt that respondent pushed the victim and grabbed her wallet out of her hand, which satisfies: (1) the physical contact required for aggravated battery; and (2) the use of force required for robbery.

¶ 40    Defendant claims that the one act of pushing cannot satisfy the physical act required in two different offenses because it violates the one-act, one-crime rule. In *Rodriguez*, the Illinois Supreme Court quoted the appellate court case of *People v. Lobdell*, stating: " '[a] person can be guilty of two offenses when a common act is part of both offenses.' " *Rodriguez*, 169 Ill. 2d at 188 (quoting *People v. Lobdell*, 121 Ill. App. 3d 248, 252 (1983)). In *Lobdell*, the appellate court found that one act of entry into a victim's home could satisfy the element of a dwelling entry for both home invasion and residential burglary. *Lobdell*, 121 Ill. App. 3d at 250-52. The *Lobdell* court explained: "A person can be guilty of two offenses when a common act is [(1)] part of both offenses or [(2)] part of one offense and the only act of the other offense." *Lobdell*, 121 Ill. App. 3d at 252. Applying this rule to the facts before it, the *Lobdell* court reasoned: "Since entry into the victim's home was only part of the home invasion offense and the sole act of the residential burglary offense, the two offenses were not carved from the same physical act." *Lobdell*, 121 Ill. App. 3d at 252. The *Lobdell* court further observed that a wound inflicted upon a victim could serve both as the bodily harm needed for aggravated battery and the injury needed for home invasion. *Lobdell*, 121 Ill. App. 3d at 251-52 (citing *People v. Tate*, 106 Ill. App. 3d 774 (1982)). Similarly, in the case at bar, the push received by the victim could be both the physical contact needed for battery (720 ILCS 5/12-

15

3(a) (West 2014)) and the use of force needed for robbery (720 ILCS 5/18-1(a) (West 2014)), since the use of force was only "part of" the robbery offense. *Lobdell*, 121 Ill. App. 3d at 252. Thus, the State's use of a single push to satisfy an element in two different offenses does not violate the one act, one crime rule; and the evidence is sufficient for both offenses. However, in the case at bar, there were two separate physical acts, one act was the push and the other was physically taking the wallet out of the victim's hand.

¶ 41                                  II. Equal Protection Claim

¶ 42        Respondent's second claim is that subjecting juveniles who have been adjudicated delinquent of a forcible felony to a mandatory minimum sentence of five years of probation violates the equal protection clauses of the United States and Illinois Constitutions. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 2. See also *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673,¶ 73 (our state constitution guarantees its citizens equal protection and due process of law in article I, section 2, in clauses that are "nearly identical to their federal counterparts").

¶ 43                                        A. Forfeiture

¶ 44        Respondent admits that he raises this issue for the first time on appeal. Normally, to preserve a sentencing issue for appellate review, an offender must object both at the sentencing and in a subsequent posttrial motion. *People v.*

*Pryor*, 2014 IL App (1st) 121792-B, ¶ 23 ("To preserve a sentencing issue for appellate review, a defendant must both object at sentencing and raise the issue in a postsentencing motion." (citing *People v. Hillier*, 237 Ill. 2d 539, 544 (2010), and *People v. Easley*, 2012 IL App (1st) 110023, ¶ 16)).

¶ 45    However, a minor respondent is excused from the requirement of raising an issue in a posttrial motion and thus is required to object only at the sentencing itself in order to preserve a sentencing issue for appellate review. *In re Samantha V.*, 234 Ill. 2d 359, 368 (2009) ("a minor must object at trial to preserve a claimed error for review," although "minors are not required to file a postadjudication motion"). In the instant case, respondent failed to object even at sentencing.

¶ 46    Nonetheless, the issue is not forfeited for our review. As respondent correctly observes, a constitutional challenge to a statute may be raised at any time. *In re J.W.*, 204 Ill. 2d 50, 61 (2003); see also *People v. Thompson*, 2015 IL 118151, ¶ 32 (a facially unconstitutional statute may be challenged at any time). In *J.W.*, a minor respondent was adjudicated delinquent and raised a constitutional challenge to certain statutorily-mandated aspects of his probation, for the first time on appeal. *In re J.W.*, 204 Ill. 2d at 54, 61. The State argued that he had forfeited any challenges to his probation by failing to raise them before the trial court. *In re J.W.*, 204 Ill. 2d at 61. Our supreme court rejected

this argument, finding that a constitutional challenge to a statute may be raised at any time. *In re J.W.*, 204 Ill. 2d at 61-62.

¶ 47    In the instant case, as in *J.W.*, respondent is a minor who was adjudicated delinquent and who is now raising a constitutional challenge to a statutorily-mandated aspect of his probation for the first time on appeal. As our supreme court held in *J.W.*, this issue is not forfeited, and the State does not argue otherwise. See also *People v. Wright*, 194 Ill. 2d 1, 23 (2000) ("a challenge to the constitutionality of a criminal statute may be raised at any time"); *People v. Rush*, 2014 IL App (1st) 123462, ¶ 9; *People v. Bailey*, 396 Ill. App. 3d 459, 462 (2009) ("While it is true, and defendant concedes, that he did not preserve this issue accordingly, we note that we are dealing with a constitutional challenge involving the validity of a statute.  Such an argument may be presented at any time, regardless of a violation of technical waiver rules.").

¶ 48                    B. Standard of Review

¶ 49    Although this constitutional issue is not forfeited for our review, respondent still bears the burden of proof to establish its validity. *In re J.W.*, 204 Ill. 2d at 62; *People v. Dinelli*, 217 Ill. 2d 387, 397 (2005) (the burden is "on the party challenging the validity of the statute" (internal quotation marks omitted)); *Wright*, 194 Ill. 2d at 24.

¶ 50    All statutes are presumed to be constitutional. *Dinelli*, 217 Ill. 2d at 397; *In re J.W.*, 204 Ill. 2d at 62; *People v. Wright*, 194 Ill. 2d 1, 24 (2000). A court must construe a statute so as to affirm its constitutionality, if reasonably possible. *Dinelli*, 217 Ill. 2d at 397. The question of whether a statute is constitutional is a question we review *de novo*. *Dinelli*, 217 Ill. 2d at 397; *In re J.W.*, 204 Ill. 2d at 62. *De novo* consideration means that we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 51                          C. Respondent's Claim

¶ 52    In the instant case, respondent challenges section 5-715 of the Juvenile Court Act of 1987 (Act), which provides in relevant part:

    "The juvenile court may terminate probation *** and discharge the minor at any time if warranted by the conduct of the minor and the ends of justice; provided, however, that the period of probation for a minor who is found to be guilty for an offense which is *** a forcible felony shall be at least 5 years." 705 ILCS 405/5-715(1) (West 2014).

¶ 53    Respondent claims that subjecting minor respondents who have been adjudicated delinquent of a forcible felony to a mandatory five-year probation violates the equal protection clauses of both the United States and Illinois Constitutions.

¶ 54    "The guarantee of equal protection requires that the government treat similarly situated individuals in a similar manner." *Jacobson v. Department of Public Aid*, 171 Ill. 2d 314, 322 (1996).  See also *In re M.A.*, 2015 IL 118049, ¶ 24; *People v. Breedlove*, 213 Ill. 2d 509, 518 (2004).   While the United States and the Illinois Constitutions contain separate equal protection clauses (the fourteenth amendment to the United States Constitution states that no "State" shall "deny to any person within its jurisdiction the equal protection of the laws" (U.S. Const., amend. XIV, § 1)), and article two of the Illinois Constitution states that "[n]o person shall *** be denied the equal protection of the laws" (Ill. Const. 1970, art. I, § 2)), the Illinois Supreme Court applies the same analysis to Illinois constitutional claims that is used by federal courts to assess federal constitutional claims.  *In re M.A.*, 2015 IL 118049, ¶ 23 ("this court applies the same standard under both the Illinois Constitution and the United State Constitution when conducting an equal protection clause analysis"); *Jacobson*, 171 Ill. 2d at 322.  While the equal protection guarantee does not preclude a state from enacting legislation that draws distinctions between different categories of people, a state is prohibited "from according different treatment to persons who have been placed by a statute into different classes on the basis of criteria wholly unrelated to the purpose of the

legislation." *Jacobson*, 171 Ill. 2d at 322. See also *In re M.A.*, 2015 IL 118049, ¶ 24; *Breedlove*, 213 Ill. 2d at 518.

¶ 55    In his opening brief to this court, respondent argues that the mandatory probation requirement violated equal protection guarantees because the purposes of the Act were not furthered by drawing a distinction between (1) juveniles who committed forcible felonies and (2) juveniles who committed other offenses. The State argued in its brief that this distinction did not violate equal protection and that equal protection was not violated when comparing juveniles who committed forcible felonies to adults. However, respondent argues that his mandatory five-year probation term violates equal protection by treating juvenile offenders more harshly than adult offenders, since the probation term for robbery is less than five years for an adult offender.

¶ 56    Thus, in this appeal, respondent asks us to consider two different distinctions drawn by statute: (1) the distinction between juveniles convicted of forcible felonies and juveniles convicted of other crimes; and (2) the distinction between juvenile robbers and adult robbers. Respondent acknowledges that this court has considered both of these arguments previously and found them not persuasive, but he argues that these cases were wrongfully decided. *People v. J.F.*, 2014 IL App (1st) 123579, ¶¶ 10-16 (rejecting a minor defendant's argument that the five-year mandatory probation requirement violates equal

protection (1) by drawing a distinction between forcible and nonforcible juvenile offenders or (2) by imposing a longer probationary term on juvenile robbers than on adult robbers); *In re Edgar C.*, 2014 IL App (1st) 141703, ¶¶ 145-52 (same). Having reviewed this issue again, we see no reason to depart from our recent precedent, as we explain below.

¶ 57    Where the challenged statute does not affect a fundamental right or involve a suspect class, courts review the statute only under the rational basis test. *Breedlove*, 213 Ill. 2d at 518; *Jacobson*, 171 Ill. 2d at 323. See also *In re M.A.*, 2015 IL 118049, ¶ 36. Whether a rational basis exists for a classification presents a question of law which we consider *de novo*. *Jacobson*, 171 Ill. 2d at 323. Under the rational basis test, a court asks only if "the method or means employed in the statute to achieve the stated goal or purpose of the legislation is rationally related to that goal." *Jacobson*, 171 Ill. 2d at 323. See also *Breedlove*, 213 Ill. 2d at 518. The legislation carries a strong presumption of constitutionality, and if any set of facts can reasonably be conceived to justify the classification, then it must be upheld. *Breedlove*, 213 Ill. 2d at 518-19; *Jacobson*, 171 Ill. 2d at 324.

¶ 58    To apply the rational basis test, a court must first identify the "stated goal or purpose" of the statute in question. *Jacobson*, 171 Ill. 2d at 323. See also *In re M.A.*, 2015 IL 118049, ¶ 26 (equal protection claims generally require "an

analysis of the purpose of the legislation at issue").  In our case, article V of the Act governs delinquent minors, and it sets forth its goals in its opening section. Section 5-101 of article V provides:

"It is the intent of the General Assembly to promote a juvenile justice system capable of dealing with the problem of juvenile delinquency, a system that will protect the community, impose accountability for violations of law and equip juvenile offenders with competencies to live responsibly and productively.  To effectuate this intent, the General Assembly declares the following to be important purposes of this Article:

(a) To protect citizens from juvenile crime.

(b) To hold each juvenile offender directly accountable for his or her acts.

(c) To provide an individualized assessment of each alleged and adjudicated delinquent juvenile, in order to rehabilitate and to prevent further delinquent behavior through the development of competency in the juvenile offender.  As used in this Section, 'competency' means the development of educational, vocational, social, emotional and basic life skills which enable a minor to mature into a productive member of society.

(d) To provide due process, as required by the Constitutions of the United States and the State of Illinois, through which each juvenile offender and all other interested parties are assured fair hearings at which legal rights are recognized and enforced." 705 ILCS 405/5-101(1) (West 2014).

¶ 59 The purpose and policy section, quoted above, was amended effective January 1, 1999, and our supreme court has acknowledged that this amendment "represent[ed] a fundamental shift from the singular goal of rehabilitation to include the overriding concerns of protecting the public and of holding juveniles accountable for violations of the law." *In re J.W.*, 204 Ill. 2d at 69 (citing *In re A.G.*, 195 Ill. 2d 313, 317 (2001)).

¶ 60 "Given the shift in purpose and policy of [the Act] to include the protection of the public from juvenile crime and holding juveniles accountable, as well as the serious problems" (*In re J.W.*, 204 Ill. 2d at 70) presented by juvenile offenders who commit forcible felonies, we cannot find that drawing a distinction between forcible and nonforcible offenders does not further the Act's rational purpose of protecting the public and holding juveniles accountable. See *In re M.A.*, 2015 IL 118049, ¶¶ 5, 19, 71 (finding constitutional a statutory requirement that a 13-year-old juvenile defendant register as a violent offender for 10 years after turning 17 years old); *In re J.W.*, 204 Ill. 2d at 70 (finding

constitutional a statutory requirement that a 12-year- old juvenile defendant register as a sex offender for life).

¶ 61    The mandatory probation requirement still leaves the trial court with the tools to craft an individualized sentence and thus fulfill the Act's twin goal of rehabilitation. 705 ILCS 405/5-101(1)(c) (West 2014) ("To provide an individualized assessment *** in order to rehabilitate ***."). In respondent's case, the specific conditions of his sentence included: 25 hours of community service; no gang, gun or drug contact; participation in any TASC evaluation recommendations; mandatory school attendance and the maintenance of a "C average" in school. Thus the mandatory probation requirement is rationally related to the twin goals of the Act because it protects the public, while still allowing for an individualized sentence. See *J.F.*, 2014 IL App (1st) 123579, ¶¶ 10-15; *Edgar C.*, 2014 IL App (1st) 141703, ¶¶ 145-50.

¶ 62    Secondly, respondent argues that the mandatory probation requirement violates the equal protection clause by treating minors more harshly than adults. Respondent argues that an adult who commits robbery, which is a Class 2 felony (720 ILCS 5/18-1(c) (West 2014)), would be subject to a maximum of only four years of probation (730 ILCS 5/5-4.5-35(d) (West 2014)), rather than the mandatory five years imposed on a minor for the same offense. However, what respondent overlooks is that, while an adult offender may receive a four-

year probation term instead of a prison term (730 ILCS 5/5-4.5-15(a)(1) (West 2014)), the adult offender still faces the possibility of three to seven years of incarceration, followed by a mandatory supervised release term of two years upon release from imprisonment. 730 ILCS 5/5-4.5-35(a), (*l*) (West 2014). While a juvenile offender may be committed to the Department of Juvenile Justice for the same time period "for which an adult could be committed for the same act" (705 ILCS 405/5-710(7) (West 2014)), the juvenile offender still does not face adult incarceration[8] and thus the minor's sentence is inherently less harsh. *Cf. McKeiver v. Pennsylvania*, 403 U.S. 528, 553 (1971) (White, J., concurring) ("the consequences of adjudication are less severe than those flowing from verdicts of criminal guilt"); *In re Rodney H.*, 223 Ill. 2d 510, 520 (2006) (unlike an adult proceeding, the purpose of a juvenile proceeding is to protect, not punish, the minor).

¶ 63        In sum, we are not persuaded that a juvenile robber is treated more harshly than an adult robber, (1) where the juvenile probation is only one year longer than the maximum probation for an adult; (2) where a minor cannot be committed to the Department of Juvenile Justice for a longer term than an adult could be incarcerated for the same offense, and (3) where juvenile commitment

---

[8] If the State files a petition to designate a juvenile proceeding as an extended jurisdiction juvenile prosecution, then a minor could face a possible sentence of adult incarceration. 705 ILCS 405/5-810 (West 2014).  However, that was not done in this case and so is not an issue on this appeal.

is inherently less harsh than adult incarceration. *J.F.*, 2014 IL App (1st) 123579, ¶ 16 (rejecting a minor defendant's argument that the five-year mandatory probation requirement violates equal protection by imposing a longer probation term on juveniles than on adults); *Edgar C.*, 2014 IL App (1st) 141703, ¶¶ 151-52 (same).

¶ 64    For these reasons, we do not find either of respondent's constitutional claims persuasive.

¶ 65                              III. Probation Condition

¶ 66    Lastly, respondent argues that the trial court abused its discretion by ordering that respondent maintain a "C average" in school as a condition of his probation.

¶ 67                              A. Forfeiture

¶ 68    As an initial matter, the State argues that respondent forfeited this issue by failing to raise it in the trial court.   In his reply brief, respondent acknowledged that he failed to raise the issue, but asks this court to consider it under the second prong of the plain error doctrine.

¶ 69    As we observed above, to preserve a sentencing issue for appellate review, an adult offender must object both at the sentencing and in a subsequent posttrial motion. *People v. Pryor*, 2014 IL App (1st) 121792-B, ¶ 23 ("To preserve a sentencing issue for appellate review a defendant must both object at

sentencing and raise the issue in a postsentencing motion." (citing *People v. Hillier*, 237 Ill. 2d 539, 544 (2010), and *People v. Easley*, 2012 IL App (1st) 110023, ¶ 16)).

¶ 70    However, a minor respondent is excused from the requirement of raising an issue in a posttrial motion and thus is required to object only at the sentencing itself in order to preserve a sentencing issue for appellate review. *In re Samantha V.*, 234 Ill. 2d 359, 368 (2009) ("a minor must object at trial to preserve a claimed error for review," although "minors are not required to file a postadjudication motion"). In the instant case, respondent failed to object even at sentencing and, unlike his equal protection claim which we discussed above, this is not a constitutional issue which may be excused from forfeiture. *In re J.W.*, 204 Ill. 2d at 61-62 (a constitutional challenge to a statute may be raised at any time). Thus, the State is correct, and the issue is forfeited.

¶ 71    Although the issue is forfeited, we may still consider it under the plain error doctrine.

¶ 72                              B. Plain Error Doctrine

¶ 73    Defendant seeks review under the second prong of the plain error doctrine.

¶ 74    When a defendant has failed to preserve an error for review, we may still review the matter for plain error. *People v. Piatkowski*, 225 Ill. 2d 551, 562-63

(2007). "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967).

¶ 75   "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Piatkowski*, 225 Ill. 2d at 565; *People v. Wright*, 2012 IL App (1st) 073106, ¶ 73.

¶ 76   Defendant challenges the probation condition under the second prong, which requires us to find that the error is so serious that it challenges the integrity of the judicial process. *Piatkowski*, 225 Ill. 2d at 565; *Wright*, 2012 IL App (1st) 073106, ¶ 101. The first step of any plain error review is to determine whether any error occurred at all. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) (citing *People v. Walker*, 232 Ill. 2d 113, 124-25 (2009)).

¶ 77                                    C. Standard of Review

¶ 78        This court will review a trial court's selection of a disposition for a juvenile offender only for an abuse of discretion. *In re Gennell C.*, 2012 IL App (4th) 110021, ¶ 11; *In re Seth S.*, 396 Ill. App. 3d 260, 275 (2009).

¶ 79        At a sentencing hearing in a delinquency case, the trial court must determine whether it is in the best interests of the minor and the public for the minor to be made a ward of the court. 705 ILCS 405/5-705(1) (West 2014); *In re Seth S.*, 396 Ill. App. 3d at 275.  If the minor is to be made a ward of the court, then the trial court must determine the disposition which best serves the interests of both the minor and the public. 705 ILCS 405/5-705(1) (West 2014); *In re Seth S.*, 396 Ill. App. 3d at 275.  In making this determination, the trial court may rely on any evidence that it considers helpful, "to the extent of its probative value, even though [it is] not competent for the purposes of the trial," including any oral or written reports. 705 ILCS 405/5-705(1) (West 2014); *In re Seth S.*, 396 Ill. App. 3d at 275.

¶ 80        When we review this determination, we will reverse only for an abuse of discretion, which occurs only when the trial court's ruling is arbitrary, fanciful or unreasonable, or where no reasonable person would take the view adopted by the trial court. *In re Gennell C.*, 2012 IL App (4th) 110021, ¶ 11.

¶ 81                             D. Probation Condition

¶ 82          The Act provides, in relevant part, that the trial court may order the juvenile offender, as part of his or her probation, to "pursue a course of study," to "attend school," and to "comply with other conditions as may be ordered by the court." 705 ILCS 405/5-715(2)(c), (j), (u) (West 2014). When crafting these "other conditions," the trial court must strive to:

> "provide an individualized assessment of each *** adjudicated delinquent juvenile, in order to rehabilitate and to prevent further delinquent behavior through the development of competency in the juvenile offender. As used in this Section, 'competency' means the development of educational *** skills which enable a minor to mature into a productive member of society." 705 ILCS 405/5-101(1)(c) (West 2014).

Pursuant to the above language in the statute, the question is whether the trial court abused its discretion in determining that *this* minor's "individualized assessment" should include maintaining a C average in school, so that he could develop the "educational *** skills" needed to "enable" him "to mature into a productive member of society." 705 ILCS 405/5-101(1)(c) (West 2014).

¶ 83          Respondent argues that the trial court abused its discretion in ordering him to maintain a C average because, despite the respondent's best efforts and through no fault of his own, he could violate this condition. Respondent claims

that his case is different from *In re M.L.K.*, 136 Ill. App. 3d 376 (1985), where the appellate court rejected a minor's challenge to having to maintain a C average as a condition of probation. The *M.L.K.* court also rejected the argument that the minor could fail to meet this condition "through no fault of his own" and "despite his best efforts." *M.L.K.*, 136 Ill. App. 3d at 382. Respondent argues that his case is different because the *M.L.K.* court interpreted the condition in *M.L.K.* as "simply requiring the respondent to make all reasonable efforts to maintain a 'C' average." *M.L.K.*, 136 Ill. App. 3d at 382. In contrast, respondent argues that there is nothing in his probation order which limits the condition to "reasonable efforts." *M.L.K.*, 136 Ill. App. 3d at 382.

¶ 84 As respondent observed in his briefs to this court, he earns A's and B's in school, he desires to attend college, and "maintaining good grades has never been a problem for [him]." In the presentence report, the probation officer stated that the minor had provided the officer with his grades and that the "minor has A's and B's." In addition, the officer reported that respondent's father had shown the officer "multiple medals the minor has earned from honor roll to the A-Team Scholar and for football and basketball." According to the minor and his parents, he has no physical or mental health issues, no drug use and no gang affiliation. In the presentence report, the minor described his

relationship with his parents as "perfect" and "stated that his parents take the time to talk to him and give him advice."

¶ 85      In light of the minor's reported grades of A's and B's, his lack of mental or physical health issues, and his supportive family, we cannot say that the trial court abused its discretion in ordering the minor to maintain a C average, in order to ensure that he develops the individual skills needed to grow into a productive adult. 705 ILCS 405/5-101(1)(c) (West 2014). Thus, we do not find that the trial court committed any error. Even if we were to find an abuse of discretion, we could not find that ordering an A-and-B student to maintain a C average challenges the integrity of the judicial process. *Piatkowski*, 225 Ill. 2d at 565; *Wright*, 2012 IL App (1st) 073106, ¶ 101.

¶ 86      Discretion is built into the juvenile system to alleviate concerns that a minor will be punished "through no fault of his own" and "despite his best efforts." *M.L.K.*, 136 Ill. App. 3d at 382. If a respondent violates a condition of probation, his probation officer has the discretion, with the concurrence of the officer's supervisor, to serve the minor instead with a notice of intermediate sanctions. 705 ILCS 405/5-720(7) (West 2014). The notice will list "the technical violation or violations involved, the date or dates of the violation or violations, and the intermediate sanctions to be imposed," which the minor may accept or reject. 705 ILCS 405/5-720(7) (West 2014). "Upon successful

completion of the intermediate sanctions, a court may not revoke probation ***." 705 ILCS 405/5-720(7) (West 2014). Even if there is a probation revocation hearing, the minor may ask the trial court to "reduce[]" the condition and the trial court has the authority to do so. 705 ILCS 405/5-720(5) (West 2014). We understand the *M.L.K.* court to be referring to provisions such as these when it stated that "noncompliance on reasonable grounds will be permitted" and when it "read the court's order as simply requiring the respondent to make all reasonable efforts to maintain a 'C' average." *M.L.K.*, 136 Ill. App. 3d at 382.

¶ 87                                    CONCLUSION

¶ 88        For the foregoing reasons, we affirm the adjudication of wardship and the sentence and order the adjudication order corrected.

¶ 89        Affirmed; adjudication order corrected.

¶ 90        JUSTICE LAMPKIN, specially concurring.

¶ 91        I concur in the judgment only.